FRANK GALL, CHARLES MICKIENDROW AND PETER MUSTO, PLAINTIFFS-RESPONDENTS, v. NEW YORK & NEW BRUNSWICK AUTO EXPRESS CO., A CORPORATION, AND WILLIAM J. PAULSON, DEFENDANTS-APPELLANTS.

Argued October 18, 1944—Decided January 19, 1945.

For the plaintiffs-respondents, *George L. Burton.*

For the defendants-appellants, *Paul J. O'Neill* and *Milton, McNulty & Augelli* (*John Milton,* of counsel).

The opinion of the court was delivered by

PORTER, J.  This is an automobile negligence action which was tried in the Middlesex Pleas and resulted in verdicts for the respective plaintiffs, against both defendants, aggregating $46,000.  The case was appealed on several grounds, and the Supreme Court affirmed on each ground.  The appeal from that judgment is on the sole ground that the trial court abused its discretion in refusing to grant a motion for a mistrial.

The undisputed facts are that as soon as the jury was impaneled and sworn and before the case was opened to them by counsel, the trial judge declared a short recess and instructed the jurors, in the presence of the litigants and counsel, not to discuss the case among themselves or with anyone. Notwithstanding the court's instruction, Musto, one of the plaintiffs in the case, sat on a bench in the corridor outside the courtroom, during this recess, with some of the women jurors and engaged one or more of them in conversation. Counsel for the defendants immediately informed the court of the incident and moved for a mistrial.  The motion was denied.  The court thereupon, before proceeding with the trial, privately and separately examined three of the women jurors in question and Musto in chambers, counsel not being present.  The court then informed counsel that he was convinced that no one was prejudiced by the conversation held, reiterated his ruling of a denial of the motion for a mistrial and ordered the trial to proceed.  An exception to the ruling was allowed.

An examination of the testimony taken before the trial judge of the nature and extent of the conversations discloses a discrepancy between the witnesses as to what had been said or heard; and as perhaps might be expected under the circumstances, these witnesses showed a lack of candor and frankness.  Musto particularly was evasive and reluctant to

fully disclose the facts. However, he admitted speaking to the jurors and telling them that he was a party to the suit they were about to try. He also said that he had served twice on a grand jury and acknowledged that he knew that he should not have spoken to the women but disclaimed any improper motive. One of the jurors was personally known to the judge, and he was doubtless influenced in his decision because of his belief in her integrity.

It seems to us that Musto's conduct under the circumstances was most reprehensible and that he was unquestionably seeking to gain an advantage for himself with the jury. It is impossible to know whether any juror was influenced or prejudices for or against any of the parties because of Musto's conduct. We may not speculate on the possible effect which might have resulted. The fact that an attempt was made, as we think, to influence the minds of the jury was sufficient to call for a mistrial. It was the duty of the trial judge in the exercise of sound discretion to have so ruled.

The Supreme Court laid down the correct rule, we think, in the three early cases of *Sloan* v. *Harrison,* 1 *N. J. L.* 123; *Den, ex dem. Chews* v. *Driver,* 1 *Id.* 166, and *Tomlin* ads. *Den, ex dem. Cox,* 19 *Id.* 76. In the Sloan case, where a party to an action had spoken of the merits of his case in the presence of one of the jurors, Chief Justice Kinsey said it was the duty of the court "to hold a strict rein over the conduct of the parties, and to guard the purity of the trial by jury with the utmost circumspection. * * * An application for a new trial is made to the discretion of the court, and we think it cannot be exercised to more advantage than in showing a pointed disapprobation of the most distant attempts to influence the minds of the jury and to corrupt the purity of justice." In the Tomlin case the fact was that a litigant had a private interview with one of the jurors; and while the extent and particulars of the conversation were not ascertained, the court was satisfied that it related to the matters in dispute in the cause. Chief Justice Hornblower stated the rule to be that every verdict in such circumstance should be set aside and added, "Indeed, I am almost willing to go further, and say, that a verdict ought to be set aside;

if it can be shown, that the prevailing party has manifested to a juror, any unusual civilities or attentions; such as treating or entertaining him at his expense, or having any other communications with him, during the progress of the trial, save such as is called for by the ordinary proprieties of life, between fellow citizens when they accidentally meet each other."

For the reasons stated we conclude that the denial of the motion for a mistrial constituted an abuse of discretion. The judgment under review is reversed, and a *venire de novo* awarded.

*For affirmance*—WELLS, RAFFERTY, DILL, JJ. 3.

*For reversal*—THE CHANCELLOR, PARKER, CASE, DONGES, PERSKIE, PORTER, THOMPSON, JJ. 7.