**Carl Clifton CAUGHMAN and wife, Bobbie Ruth Hollan Caughman, Appellants,**

**v.**

**Olvis Vanburn GLAZE, Appellee.**

**No. 14522.**

Court of Civil Appeals of Texas.

San Antonio.

Feb. 15, 1967.

Rehearing Denied March 15, 1967.

William B. Smith, Lynch, Chappell & Allday, Midland, for appellants.

Crenshaw, Dupree & Milam, Lubbock, for appellee.

CADENA, Justice.

Plaintiffs, Carl Clifton Caughman and wife, Bobbie Ruth Caughman, appeal from a judgment, based on a jury verdict, denying them recovery against defendant, Olvis Vanburn Glaze, for injuries suffered by them when their car was struck from the rear by a vehicle driven by defendant. The judgment also denied defendant recovery on his cross-action, but he has not appealed from such ruling.

The jury found that defendant was guilty of the following acts or omissions, each

of which was found to be a proximate cause of the collision: (1) Failure to properly overtake and pass plaintiffs' car on the left; (2) failure to change the course of his vehicle to the right just before the collision; (3) following too closely; and (4) failure to properly control the speed of his vehicle. However, the four negligence issues submitted in relation to each of such acts and omissions were answered favorably to defendant. The jury further found that Mr. Caughman negligently failed to keep a proper lookout and that such negligence was a proximate cause of the collision.

Plaintiffs contend that the jury's negative answers to the issues relating to defendant's negligence are contrary to the great weight and preponderance of the evidence; that the findings of contributory negligence on the part of Mr. Caughman are without support in the evidence; that the trial court erred in refusing to submit special issues tendered by plaintiffs relating to discovered peril and in denying plaintiffs permission to file, at the conclusion of the evidence, a trial amendment asserting the doctrine of discovered peril as a ground of recovery; and that the trial court abused its discretion in refusing to grant plaintiffs a new trial because of jury misconduct.

■ Where jury findings are challenged as being contrary to the overwhelming weight and preponderance of the evidence, we must consider all of the evidence in the case, and set aside the verdict and remand the cause for a new trial if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. The evidence supporting the verdict is to be weighed along with other evidence in the case, including that which is contrary to the verdict. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

Mr. Caughman testified that as he was approaching the City of Lamesa from the south on Highway 137, he began to slow down in obedience to a "Speed Zone Ahead" warning sign. Before he began to slow down he looked in the rear-view mirror and saw no vehicles behind him. There is no evidence in the record indicating where defendant's automobile was at this time. Although defendant testified that he turned onto Highway 137 from a side road, there is no evidence indicating the location of such side road. According to Mr. Caughman, the point of collision was some 800 feet beyond the point at which he started to decelerate. He testified that at the time defendant's car struck his vehicle from behind he was traveling at a speed of about 35 miles per hour. Lawrence Jackson, who operated a service station near the scene of the accident, estimated that the Caughman vehicle was moving at a speed of 15–25 miles per hour at the time of impact. Jackson testified that he was watching the Caughman car because of his belief, based on the slow speed of the vehicle, that Mr. Caughman was going to turn into the service station.

Defendant testified that, as his car reached the crest of a "rise" in the highway, he could see the top of plaintiffs' automobile about one-eighth of a mile away. He added that, because of the topography of the area, he did not see the Caughman vehicle again until, upon reaching the summit of another high point in the road, he saw it about 100 or 150 feet ahead. He immediately applied his brakes, leaving about 90 feet of skid marks before he hit the rear of the Caughman car. Defendant's car stopped immediately upon striking plaintiffs' automobile.

The evidence does not disclose the speed at which defendant's automobile was moving prior to the time that he applied his brakes. The service station operator testified that, as he was watching the Caughman car, he saw defendant's vehicle out of the corner of his eye. He was unable to give any estimate as to the speed of defendant's car, but stated that he "thought" it was moving "maybe a bit faster than normal traffic." Although the speed limit was 70 miles per hour, there is no evidence

concerning the speed at which "normal traffic" moved along this portion of the highway.

The evidence is undisputed that there was no oncoming traffic to prevent defendant from passing on the left, although there is evidence to the effect that if defendant had passed on the left he would have been on the left side of the highway at a point within 100 feet of an intersection. The evidence also shows that defendant could have passed safely to the right, although this would have required that he leave the paved portion of the highway.

■ Before we can disregard the jury's findings that defendant's failure to pass on the left or right was not negligence, we must be prepared to hold that plaintiffs established, by a preponderance of the evidence, that the ordinarily prudent man would not have acted as did the defendant under the same or similar circumstances. The evidence furnished no basis for an estimate, as distinguished from sheer speculation, concerning defendant's speed. The jury, therefore, had no way of determining whether defendant, as he came to the crest of the hill and saw plaintiffs' car some 150 feet away, had time to comprehend the situation and react by changing the course of his vehicle. In determining what an ordinarily prudent man would do under given circumstances, the time available for realization and reaction is of extreme importance. Under the evidence in this case, we cannot say that the jury's failure to find negligence was against the preponderance of the evidence.

■ Plaintiffs insist that, since plaintiff failed to pass on the left or right, he was guilty of a violation of Sections 54(a) and 55 of Art. 6701d, Vernon's Ann.Civ.St. (1960), and that such failure constituted negligence as a matter of law. Sec. 54(a) provides that a driver overtaking a ve-

hicle proceeding in the same direction "shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle." [1] It is clear from the language of Sec. 54(a) that the violation there denounced is passing on the right, except where passing on the right is permitted under the provisions of Sec. 55. The evidence, therefore, does not disclose a violation of Sec. 54(a).

■ We find no basis for holding that defendant was guilty of negligence per se in failing to pass to the right. Sec. 55 merely enumerates the circumstances under which passing on the right is permitted. It imposes no duty to pass on the right. Further, that section expressly prohibits passing on the right when such movement can be accomplished only by driving off the pavement or main-traveled portion of the roadway.

■ In connection with the finding that defendant failed to control the speed of his vehicle properly, it must be noted that, by way of an explanatory instruction, the jury was told that "in every event, speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on the highway." While it is unnecessary for us to consider the propriety of such an explanatory instruction, it is apparent that it permits the jury to infer, from the fact that a collision occurred, a failure to control speed properly. Since it is undisputed that a collision did occur, the jury finding of improper control of speed is not surprising. However, in view of the absence of evidence as to defendant's speed, it cannot be said that the great weight and preponderance of the evidence demanded a finding that defendant failed to act as an ordinarily prudent man would have acted under the same or similar circumstances.

1. Sec. 57(a)2, prohibits driving any vehicle to the left side of the roadway when approaching within one hundred feet of an intersection.

The issue inquiring whether defendant was following the Caughman vehicle too closely was accompanied by an explanation embodying the language found in Sec. 61 (a) of Art. 6701d.[2] Plaintiffs say that the jury finding that defendant was following too closely thus establishes a violation of Sec. 61(a) and that, therefore, defendant was guilty of negligence as a matter of law.

■ Article 6701d is a comprehensive act originally passed in 1947. It is a codification of many statutes then in existence, and includes, also, many new statutory regulations and the transposition into statutory form of many common law rules of conduct. But not every violation of Art. 6701d constitutes negligence as a matter of law. In Schwab v. Stewart, 387 S.W.2d 939 (Tex.Civ.App.1964, writ ref'd, n. r. e., 390 S.W.2d 752, Tex.Sup., 1965), it was held that a violation of Sec. 61(a) did not establish negligence as a matter of law. By absolving defendant of negligence, the jury found, in effect, that, although he violated Sec. 61(a), he was not without excuse in doing so.

■ Plaintiffs' requested special issues relating to discovered peril were substantially in the form approved by the Supreme Court in Turner v. Texas Co., 138 Tex. 380, 159 S.W.2d 112, 118 (1942). However, even if it be assumed that the evidence in this case raised the question of discovered peril, we believe that it also fairly raised the question of whether defendant had reason to believe that plaintiffs would be able to extricate themselves from their position of peril. Where the issue of possible extrication is raised by the evidence, the issues relating to discovered peril must embody the element of possible extrication. Sisti v. Thompson, 149 Tex. 189, 229 S.W.2d 610 (1950). Since plaintiffs' requested issues did not embody the element of probability of extrication, they were not, under the facts of this case,

"substantially correct," and, therefore the trial court did not err in refusing to submit them. Texas Rules of Civil Procedure, rules 273, 279; Hodges, Special Issue Submission in Texas 166–167 (1959).

Plaintiffs' proffered trial amendment, insofar as it related to discovered peril, charged that defendant was negligent in "failing to use the means at hand to avoid the collision, having due regard for his own safety and the safety of his automobile, after he knew and realized" that plaintiffs' automobile was in a perilous position. Even if filing of the trial amendment had been permitted, plaintiffs would not have been entitled to submission of the issues which they requested. Under these circumstances, the error, if any, of the trial court in refusing leave to file the trial amendment was harmless.

■ Since we have concluded that the jury's refusal to find defendant negligent is not contrary to the great weight and preponderance of the evidence, and that plaintiffs were not entitled to submission of their requested special issues pertaining to discovered peril, the question of the sufficiency of the evidence to support the jury's finding that Mr. Caughman was negligent is rendered academic. Even if we should conclude that there was no evidence to support such finding, there would be no basis for the rendition of a judgment other than that entered by the court below.

Plaintiffs' complaints of jury misconduct are based on the following incidents: (1) The bailiff, at the request of one of the jurors, furnished the jury with a magnifying glass which was used for the purpose of studying pictures of the highway in order to determine whether, at the scene of the collision, there was a double yellow line on the highway. (2) The jury considered certain matters not in evidence, including the question of whether either party had received a traffic ticket; whether there

2. This Section provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the conditions of the highway."

was a double yellow line on the highway; and the personal knowledge of jurors con-concerning the topography of the highway near the scene of the collision. (3) A juror communicated with the defendant during the course of the trial. (4) The jury agreed on a result before they answered the special issues. (5) One of the jurors, prior to the trial, had read a magazine article questioning the honesty of personal injury claims based on so-called "whip-lash" injuries.

■ It has frequently been held that the use of a magnifying glass by members of the jury during deliberation is not error. The use of such a device merely promotes an understanding of the evidence introduced and does not amount to the reception of new evidence. J. H. Robinson Truck Lines v. Ragan, 204 S.W.2d 662 (Tex.Civ. App., 1947, no writ).

■ There was some speculation in the jury room as to whether either Mr. Caughman or the defendant had received a traffic violation ticket. The testimony of the juror Wood shows that the members of the jury were unable to determine whether either party had received a traffic ticket. There is nothing in the record before us to indicate that such speculation affected the verdict in any way.

■ The same thing is true concerning the discussions of the existence of a double yellow line. After examining the photographs introduced in evidence with a magnifying glass, the jurors were unable to form any conclusion one way or the other.

■ The evidence relating to the discussions of the condition of the road is rather sketchy.[3] Defendant had testified that the road was hilly. This point was not seriously disputed. Mr. Caughman stated that there was a "grade" in the highway at about the point where the road entered Lamesa. In view of the lack of specific information concerning the nature of the discussions in the jury room, the time and circumstances of such discussions, and the fact that the topography of the road was not a hotly· disputed item, we do not believe that plaintiffs have shown that such discussions probably produced an unfair result. Warren v. Dikes, 404 S.W.2d 946 (Tex.Civ.App.1966, no writ).

■ There is evidence that, during one of the recesses for meals, defendant said something to one of the jurors. The juror who testified to this incident was rather vague about the nature of the discussion. At one point he said that somebody looked at his watch and said, "Well, we're about here on time." He said defendant spoke to the juror "in general, you know, just like me and you would speak." He heard nothing said concerning the lawsuit. Finally, he said that he "didn't see a conversation," and that the interchange amounted to no more than an exchange of salutations.

There is nothing in this evidence to indicate even the possibility of prejudice to plaintiffs. There is no resemblance between the vague evidence here and the situation which existed in Texas Employers' Ins. Ass'n v. McCaslin, 159 Tex. 273, 317 S.W.2d 916 (1958). We do not interpret McCaslin as holding that all communica-

---

3. The testimony of the juror Wood, on direct examination, was as follows: "Q. Mr. Wood, we move further along, and concerning the road outside of Lamesa, the road leading into Lamesa. A. Yes, sir. Q. And I believe you stated there were discussions in the jury room concerning this road that leads into Lamesa, is that correct, sir? A. That's correct. Q. And people had of their own—jurors of their own personal knowledge, dis-cussed their own personal knowledge of the hills and dales or hills and valleys on the road there. A. That's correct. Q. Or lack of them. And that you discussed the effect that such hills and dales would have on cars, whether they were stopped or going slow, or going fast, and things of that nature. A. That's correct. Q. You discussed this, of course, in relation to this accident? A. This particular accident, yes, sir."

tions between a party and a juror will require a finding of prejudicial misconduct.

 One of the jurors executed an affidavit to the effect that the members of the jury agreed beforehand to find defendant "a bit more negligent" than was Mr. Caughman, and that they answered the special issues accordingly. The testimony of this juror is vacillating and inconclusive. He testified that the affidavit was "misleading" as to the procedure followed in the jury room. Even if his testimony be interpreted in the light most helpful to plaintiffs, we find nothing which compels us to conclude that the trial court abused its discretion in refusing to find the existence of a binding agreement to reach a certain result and to answer the special issues in a manner to effectuate such agreement. Casual references or discussions of the fault of the parties or the consequences of the findings are not fatal so long as no juror is impelled thereby to answer without reference to the evidence. 3 McDonald, Texas Civil Practice (1950), § 14.12, p. 1245.

 Some months prior to the trial, one of the jurors read an article in a national publication about injuries resulting from automobile collisions. The article contained a discussion of claims based on "whiplash" injuries. This juror testified that, when the doctor who testified for plaintiffs used the expression "whiplash," he, the juror, listened more attentively than he might have done had he not read the article. The juror did not mention the article to any other juror. There is nothing to indicate that the reading of the article in question by this juror affected the verdict in any way.

 Finally, plaintiffs insist that the fact that the jury disregarded the evidence concerning the injuries sustained by plaintiffs shows that the jury was prejudiced against plaintiffs. We find no evidence of bias and prejudice on the part of the jury. In this connection, it should be pointed out that, after finding that Mr. Caughman's negligence was the proximate cause of the accident, the jury found that defendant had suffered no personal injury and that his car had not been damaged.

The judgment of the trial court is affirmed.

KLINGEMAN, J., not participating.