486 A.2d 1378

James R. COLOSIMO, Individually and t/d/b/a Kinzua Korners and Safari Lounge

v.

PENNSYLVANIA ELECTRIC COMPANY, Appellant,

v.

Lamont E. EDEL and Frank Cardamone.

Lamont E. EDEL and Sandra Kay Edel

v.

PENNSYLVANIA ELECTRIC COMPANY, Appellant,

v.

Lamont E. EDEL, James R. Colosimo and Frank Cardamone.

Superior Court of Pennsylvania.

Argued May 7, 1984.

Filed Dec. 31, 1984.

364

John M. McLaughlin, Erie, for appellant.

Paul H. Titus, Assistant District Attorney, Pittsburgh, for appellees.

Before SPAETH, President Judge, and CAVANAUGH, WIEAND, CIRILLO, MONTEMURO, POPOVICH and HOFFMAN, JJ.

PER CURIAM:

The Court being equally divided, the Order of the Court of Common Pleas is AFFIRMED.

CIRILLO, J., filed an opinion in support of affirmance.

SPAETH, President Judge, filed an opinion in support of remand.

WIEAND, J., filed an opinion in support of reversal in which MONTEMURO, J. and POPOVICH, J., joined.

POPOVICH, J., filed an opinion in support of reversal.

## OPINION IN SUPPORT OF AFFIRMANCE

CIRILLO, Judge:

On June 17, 1977, fire destroyed a restaurant owned by appellee James R. Colosimo, and occupied by appellees, LaMont E. Edel and Sandra K. Edel. The Edels and Mr. Colosimo filed separate suits against the appellant, the Pennsylvania Electric Company. Appellant then joined Frank Cardamone and Mr. Edel as additional defendants in both suits, and joined Mr. Colosimo as an additional defendant in the Edel suit. The cases were consolidated for trial which commenced on April 7, 1980.

Following a jury verdict in favor of defendant-appellant, the trial court granted appellees' supplemental post-trial motions and entered an order for new trial. The trial court granted a new trial because undisclosed out-of-court communications occurred during the course of trial between the attorney for additional defendant Cardamone and one of the sitting jurors.

Sometime prior to the commencement of trial in this case, Jay Paul Kahle, Esquire, attorney for defendant Cardamone, had been retained by Jay Chapman, Jr., to probate the estate of Mr. Chapman's mother. This attorney-client relationship was made known to the court and to all counsel at the outset of trial. Neither the court nor the attorneys moved for a mistrial based on this disclosure, and Mr. Chapman was permitted to sit as a juror. However, contrary to the trial court's express instruction, attorney Kahle communicated and conducted business with juror Chapman during the course of trial. Specifically, appellees' counsel learned that on April 18, 1980, while trial was in progress, Chapman visited Kahle's office to sign inventory and appraisal papers for his mother's estate and to discuss other

matters related to the estate.[1]  One of the purposes of this meeting was to expedite the filing of the estate papers in order to secure a 5% inheritance tax discount for Chapman. At this meeting Chapman was first made aware of Kahle's legal fee.  Also Chapman on that day wrote a check to Kahle for $1,990.54.  The trial court granted appellees' motion for new trial primarily on the basis of the appearance of impropriety created by this meeting.

On appeal, appellant admits that the out-of-court communications took place, but denies that a new trial was required because of them.  Appellant maintains that the trial court abused its discretion in ordering a new trial without considering the effect of the contact between Cardamone's attorney and the juror;  that is, whether this out-of-court meeting in any way influenced the verdict.

■ We note that the decision to "grant or refuse a mistrial because of alleged improper conduct on the part of counsel is solely within the discretion of the trial judge." *Printed Terry Finishing v. City of Lebanon,* 247 Pa.Super. 277, 299, 372 A.2d 460, 471 (1977).  After consideration of pertinent concerns, we conclude that the trial court acted within its discretion.

■ In the leading Pennsylvania case on attorney-juror contacts, we stated the general rule that a trial court should grant a new trial if an attorney communicates with a juror during the course of trial and the harmlessness of such contact is not shown.  *Printed Terry, supra,* 247 Pa.Superior Ct. at 299–300, 372 A.2d at 471.  *See also, Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892).  Our disposition in *Printed Terry* suggests that before granting a new trial, the trial court must assess the prejudicial impact of the contact between the attorney and the sitting jury, and determine whether such contact influ-

1.  There is some conflict in testimony as to the extent of contact at this April 18th meeting.  Kahle testified that he merely passed Chapman in the hall, while Chapman testified that the meeting lasted fifteen minutes.

enced the verdict.[2] However, we expressly reserved ruling on whether the trial court must always consider the effect of the contact, or whether some communications are so serious in nature that the appearance of impropriety alone may be sufficient to compel a new trial. We now have occasion to review this question.

■ In *Printed Terry* we recognized the fundamental impropriety of lawyer-juror communications during the course of trial,[3] but noted that certain accidental and casual contacts were inevitable. We stated that where such unavoidable and momentary contacts occur " 'it is not required that [the parties] be curt or lacking in the customary amenities of social intercourse ...' " *Printed Terry, supra,* 247 Pa.Super. at 299, 372 A.2d at 471, (quoting *Pessin v. Kenneland Association,* 298 F.Supp. 593, 599 (E.D.Ky. 1969)). Certainly a new trial is not warranted where an attorney acknowledges a juror in an elevator or says hello at a ball game. Where the contact is minimal and discreet, the trial court rightly should consider whether the juror has been influenced before granting a new trial.[4] *See Printed*

2. We look with suspicion upon such out-of-court communications and presume that prejudice arises therefrom. *Mattox v. United States, supra; California Fruit Exchange v. Henry,* 89 F.Supp. 580 (W.D.Pa. 1950). This presumption of prejudice, where applicable, is rebutted only by a strong showing to the contrary. *Mattox v. United States, supra; see also, Hobson v. Wilson,* 737 F.2d 1 (D.C.Cir.1984).

3. The Code of Professional Responsibility adopted by our Supreme Court provides that: "During the trial of a case: (1) A lawyer connected therewith shall not communicate with or cause another to communicate with any member of the jury...." Code of Professional Responsibility DR 7–108; "To safeguard the impartiality that is essential to the judicial process, veniremen and jurors should be protected against extraneous influences. When impartiality is present, public confidence in the judicial system is enhanced. There should be no extrajudicial communication with ... jurors during trial by or on behalf of a lawyer connected with the case." Code of Professional Responsibility EC 7–29.

4. In *Printed Terry* the full content of the out-of-court communication was not explained. The trial court only knew that such communication was made. Because the content was not explained the trial court could not tell whether a mere social amenity was involved or something more. Therefore we held that the trial court properly granted a new trial. *See California Fruit Exchange v. Henry, supra* at 588

*Terry, supra.* Numerous jurisdictions have held that such insignificant contact is not ground for mistrial in the absence of prejudice. *See e.g., Potts v. Krey,* 362 S.W.2d 726 (Ky.1962); *Safeway Trails, Inc. v. Smith,* 222 Md. 206, 159 A.2d 823 (1960); *Atwood v. Lever,* 274 So.2d 146 (Miss. 1973); *O'Berry v. Perry,* 266 N.C. 77, 145 S.E.2d 321 (1965); *Landes v. Faella,* 106 R.I. 23, 255 A.2d 724 (1969). *See generally,* 62 A.L.R.2d 298 (1958).

■ However, we believe that a prejudice standard is not always appropriate. There are certain attorney-juror contacts which happen during trial, "which if permitted to stand would shake the confidence of laymen in the fairness of judicial proceedings." *Baker v. Ohio Ferro-Alloys Corp.,* 23 Ohio App.2d 25, 261 N.E.2d 157, 164 (1970); *Omaha Bank, Etc. v. Siouxland Cattle Co-Op.,* 305 N.W.2d 458 (Iowa 1981). In such circumstances we must find reversible error regardless of a showing of actual prejudice. In cases of such gross impropriety, our concern is not with the contact's potential influence on a discrete verdict; rather we seek to protect against the "confidence-shaking effect upon future cases, which would result from appellate disregard of such events." *Baker v. Ohio Ferro-Alloys Corp., supra,* 23 Ohio App.2d 25, 261 N.E.2d at 164.

After all, trial by jury is among the unique and fundamental institutions of our democratic government. *Mix v. North America Co.,* 209 Pa. 636, 59 A. 272 (1904); Alexis de Tocqueville, *Democracy in America* (1840). Therefore, it is imperative that we promote public confidence in our judicial system by vigilantly protecting the integrity of our jury system. "Trial by jury presupposes that the jury works in a controlled environment, untouched by any influence other than that properly permitted by the trial judge." *Hobson v. Wilson, supra.* To safeguard zealously this controlled environment, we must see to it that "each juror enters a case impartial, and throughout trial remains uncontaminated by outside pressures." *Id.;* Code of Professional

(out-of-court communication must be explained). In the instant case the content of the subject communication was amply detailed.

Responsibility EC 7–29. We must take every "precaution against evil communication which may corrupt [the jury]." *Mix v. North America Co., supra,* 209 Pa. at 645, 59 A. at 274–75.

■ In the instant case, the contact between attorney Kahle and juror Chapman was not insignificant, and certainly far more substantial than the mere social amenity contemplated in *Printed Terry.* We agree with the trial court that the possible prejudicial effect on the verdict of the Kahle-Chapman business meeting is not especially relevant. Indeed, we subscribe to the trial court's position that the appearance of impropriety here is alone sufficient to warrant a new trial. Both Chapman and Kahle were admonished by the court to cease out-of-court communication during the course of trial. In direct defiance of this caveat, Chapman and Kahle met to discuss business. Here, the fact that this meeting directly or indirectly resulted in a considerable tax savings to Chapman adds to the appearance of impropriety.

■ We simply cannot allow a sitting member of a jury (here, the jury foreman) to consult or conduct business with an attorney for one of the parties during the course of trial without permission of the court. Thus, we hold that where, as here, substantial undisclosed business is conducted between an attorney and a juror during trial, democratic principles compel a new trial. While we are not certain that Chapman, as juror, was in fact contaminated, the appearance of outside influence is inescapable.

Order affirmed.

## OPINION IN SUPPORT OF REMAND

SPAETH, President Judge:

The issue in this case is whether a new trial should be granted as to the defendant, Pennsylvania Electric Compa-

ny (PECO), where the attorney for the additional defendant, Cardamone, initiated a communication with a juror.[1] In my view this issue cannot be resolved without findings of fact by the trial court. Since the trial court made no findings, I should remand for further proceedings.

This case is difficult because the trial court granted a new trial as to PECO despite the fact that PECO's attorney did nothing wrong. I think, however, that we may dissolve this difficulty if we put it aside for the moment, and approach it step by step.

Suppose a case involving only two parties—plaintiff and defendant. If it appears that during the trial there was a communication between the defendant's attorney and a juror, and if the jury finds for the defendant, is the plaintiff entitled to a new trial? In answering this question, the first inquiry should be, "What were the contents of the communication?"

In the very unusual case the contents of the communication will not be known. That was the case in *Printed Terry Finishing Co. v. City of Lebanon,* 247 Pa.Super. 277, 372 A.2d 460 (1977), because there, while the trial judge received testimony showing that there had *been* a communication, he refused to receive testimony regarding the *contents* of the communication. We held that in these circumstances

---

1. This is a simplified statement of the parties to the case, which is procedurally complex. Appellees, the owner and occupiers of a restaurant property, sued appellant, PECO, for damages arising out of a fire at their premises. Two suits were brought, one by the owner and one by the occupiers. Later, the two suits were consolidated. PECO joined Frank Cardamone as an additional defendant in the two consolidated suits. In the suit brought by the owner of the property, PECO also joined the occupier as an additional defendant. In the suit brought by the occupiers of the property, PECO also joined the owner and one of the occupiers as additional defendants. Following verdicts in favor of PECO and all of the additional defendants, the trial court, on appellees' supplemental post-trial motions, entered an order for a new trial on the ground that the attorney for the additional defendant Cardamone had improper contact with one of the jurors. Only PECO has appealed. In what follows, the phrase "the additional defendant" will refer only to Cardamone. Although there were other additional defendants, it is unnecessary to the analysis to refer to them.

a new trial was required.[2] I agree with my colleagues that much that we said in *Printed Terry Finishing Co.* is relevant to our consideration here, but it was nevertheless *dictum,* and to decide this case we must look further.

Suppose then that we know the contents of the communication, and that they concerned the law suit.[3] The question should be, "Who initiated the communication?" If the defendant's attorney did, then in my opinion the plaintiff should be granted a new trial. The defendant's attorney may argue that he did not intend to influence the jury by, or that anyway the jury was not influenced by, the communication, but I should regard those arguments as without merit. The attorney knew, or should have known, that his communication *might* influence the jury, and that in initiating the communication he was doing wrong. Code of Professional Responsibility, DR7–108(B)(1) (a lawyer connected with the trial of a case shall not communicate with or cause another to communicate with any member of the jury). He should not be permitted to *try* to gain a favorable verdict, by unprofessional conduct, and then when he *does* gain it, be heard to say that his unprofessional conduct was of no consequence.[4] Those cases not requiring a new trial are distinguishable on their facts. *See, e.g., Califor-*

2. This holding was consistent with the holding in *Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892) (new trial required where trial court did not consider affidavits alleging that bailiff had improper communications with the jury about the case and the defendant and that newspaper editorials concerning the case and the defendant had been introduced into the jury room).

3. Such communications may be written or oral, and may concern either the subject of the suit or evidence that might be introduced, such as evidence of a prior criminal record for impeachment purposes. In *Landes v. Faella,* 106 R.I. 23, 255 A.2d 724 (1969), the court held there must be some showing that the conversation complained of was in some way related to the trial itself before a jury verdict will be set aside. This case represents a very strict view and is not generally followed. *See* discussion *infra.*

4. If the communication is initiated not by the defendant's attorney but by the defendant himself it may be that a different rule should apply. Since the defendant is not subject to rules of professional conduct, as the attorney is, it may be necessary to inquire further and determine whether the defendant intended to influence the jury. However, that case is not before us and we therefore need not decide it now.

*nia Fruit Exchange v. Henry,* 89 F.Supp. 580 (W.D.Pa.) (attorney inquired of a juror about the jury's verdict, but no new trial granted because jury had already agreed upon and sealed verdict), *aff'd on other grounds,* 184 F.2d 517 (3d Cir.1950); *Wise & Hanslip v. Bosley,* 32 Iowa 34 (1871) (no new trial granted where defendant approached juror and asked "what he thought of the case, or if it was not a singular case" because evidence showed defendant did not remember person was a juror and that he promptly stopped talking upon learning person was juror); *Paustenbaugh v. Ward Baking Co.,* 374 Pa. 418, 97 A.2d 816 (1953) (no new trial granted in a suit where only damages were being litigated where plaintiff's wife complained to three jurors about her husband's health and the jurors did not respond and reported the incident to the court and court cautioned the jurors not to say anything to the other jurors).

Suppose, however, that the defendant's attorney did not initiate the communication. Perhaps, for example, a juror or a journalist or a tipstaff initiated an inquiry or made some observation about some aspect of the suit. In such a case the defendant's attorney has done nothing wrong, and before deciding whether to grant the plaintiff a new trial the trial court should inquire further. If the court finds that the plaintiff was prejudiced, then a new trial should be awarded. For even though the defendant's attorney, which is to say, the defendant, did nothing wrong, still, the plaintiff has because of the communication not had a fair trial. *See Mattox v. United States,* 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892) (where bailiff conversed with jurors about defendant's prior criminal record and where jurors were read editorial comments unfavorable to defendant from a newspaper, judgment reversed because these contacts were prejudicial to defendant); *Lindsey v. Watts,* 273 Ark. 478, 621 S.W.2d 679 (1981) (trial court properly denied motion for new trial where juror remarked to attorney that exhibit had not been shown to jury and attorney said that jury could take exhibits); *Safeway Trails, Inc. v. Smith,* 222 Md. 206, 159 A.2d 823 (1960) (where juror had a general conversation

about suit with person not related to suit, court found conversation innocuous); *Mix v. North American Co.,* 209 Pa. 636, 59 A. 272 (1904) (defendant entitled to new trial in part because third party discussed case with juror and attempted to influence the juror's verdict); *Brancato v. Kroger Co.,* 312 Pa.Super. 448, 458 A.2d 1377 (1983) (where juror questioned party about her physical condition and party replied she couldn't discuss it, no proof of prejudice requiring a new trial).

Now suppose a case in which the communication did *not* concern the law suit. *See, e.g., Happoldt v. Guardian Life Ins. Co.,* 90 Cal.App.2d 386, 203 P.2d 55 (1949) (juror talked with attorney, remarking that he looked like a motion picture actor and a "few bantering remarks were made"); *Rudolph v. Gleason,* 339 So.2d 298 (Fla.Dist.Ct.App.1976) (juror remarked to defendant in elevator that she was reluctant to give her age upon voir dire examination and defendant answered that it was the woman's prerogative not to reveal her age); *Sunset Acres Motel, Inc. v. Jacobs,* 336 S.W.2d 473 (Mo.1960) (one juror talked with plaintiff's wife about juror's small son and showed her pictures of the boy; another juror stopped and discussed weather and fishing with plaintiff and his wife); *Gross v. Moore,* 166 Pa.Super. 575, 73 A.2d 221 (1950) (adjuster for defendant insurance company talked with juror who was his niece about family matters); *O'Berry v. Perry,* 266 N.C. 77, 145 S.E.2d 321 (1965) (juror encountered plaintiff and witness and asked witness what office he was running for; all three walked to lunch together talking about fishing and corned herring); *Schoenrock v. Eib,* 75 S.D. 613, 71 N.W.2d 82 (1955) (in a wrongful death suit brought by plaintiff, jurors initiated conversation with defendant regarding farming conditions in Kansas, defendant's home state, and South Dakota). Generally speaking, in such cases the courts have inquired as to the party's or the party's attorney's intent, and whether the jury was influenced by the communication, without making clear the relationship of these inquiries. *See Pessin v. Keeneland Association,* 298 F.Supp. 593

(E.D.Ky.1969) (merely concluding that the contact did not influence the verdict and was not made with any improper design); *Atwood v. Lever,* 274 So.2d 146 (Miss.1973) (mistrial or new trial should not be granted unless the circumstances indicate some prejudice, wrongful intent, or unfairness); *Shew v. Bailey,* 37 Tenn.App. 40, 260 S.W.2d 362 (1951) (concluding that the contact did not influence the verdict and was not made with any improper design). *See also California Fruit Exchange v. Henry, supra* (stating rule that if the communication was not about the case and nothing done for purpose of influencing the mind of the jury, and that the communication had no influence on the verdict, then there is no ground to set aside verdict). I believe the trial court should proceed in the same way as in cases that involve communications that concern the law suit, with one difference. I do not believe that the fact that the defendant's attorney initiated the communication should by itself require a new trial. For, given that the communication did not concern the law suit, it may be unfair to impute to the attorney an intention to influence the jury. The court should therefore inquire whether the defendant's attorney did intend to influence the jury. For even though the communication did not concern the law suit, still, by engaging in it the defendant's attorney may have intended to influence the jury, by indirection. If the court finds intent to influence the jury, then the plaintiff should be granted a new trial. If the court finds no intent, then it should inquire whether even so, the jury *was* influenced in the defendant's favor.[5] If it was, then the plaintiff should

---

**5.** Presumably this is the reasoning behind decisions finding no prejudice in contacts initiated by jurors by briefly or curtly responded to by litigants, and vice versa. *See, e.g., Sisters of St. Joseph v. Edwards,* 45 Ariz. 407, 44 P.2d 155 (1935) (conversation not so prejudicial as to require reversal where juror and plaintiff discussed union business unrelated to the suit); *Potts v. Krey,* 362 S.W.2d 726 (Ky.1962) (no prejudice where plaintiff asked juror to ask plaintiff's daughter to bring injured boy into courtroom); *Caughman v. Glaze,* 412 S.W.2d 357 (Tx.Civ.App.1967) (no prejudice where defendant spoke with jurors and exchanged salutations); *State v. Black,* 551 P.2d 518 (Utah 1976) (no prejudice shown where juror inquired how testifying police officer's father was). *See also Chagnon v. Union Leader Corp.,* 103

be granted a new trial. While the cases are not uniform, I believe this is the view of the better reasoned ones. *See Gall v. New York and New Brunswick Auto Express Company,* 132 N.J.L. 466, 40 A.2d 643 (1945) (new trial granted because plaintiff had attempted to gain advantage and even though success of this attempt not known); *Baker v. Ohio Ferro-Alloys Corp.,* 23 Ohio App.2d 25, 261 N.E.2d 157 (1970) (new trial granted where attorney complimented defense witness on unrelated matter in presence of jurors; no specific prejudice need be shown). *See also United States v. Harry Barfield Co.,* 359 F.2d 120 (5th Cir.1966) (where president of taxpayer corporation deliberately and intentionally engaged juror in conversation about family and business matters and although juror testified that he was not influenced by the contact, case must be reversed for a new trial); *Pekar v. United States,* 315 F.2d 319 (5th Cir.1963) (where Assistant United States Attorney sat down and engaged juror in long conversation relating to juror's business, new trial necessary); *State v. Jones,* 363 Mo. 998, 255 S.W.2d 801 (1953) (judgment reversed where sheriff, who was a material witness against the state, related to juror his experience with some unspecified burglary); *Noble v. McAllister Dairy Farms, Inc.,* 52 Ohio Op. 52, 114 N.E.2d 540 (C.P.1952) (new trial granted where treasurer of the prevailing plaintiff company fraternized with member of the jury; no need to show effect on verdict where there is misconduct by prevailing party). *But see Ryan v. United States,* 191 F.2d 779 (D.C.Cir.1951) (where prosecuting attorney talked with several jurors about matters not related to the case, new trial not granted because conversation had not been prejudicial), *cert. denied sub. nom. Duncan v. United States,* 342 U.S. 928, 72 S.Ct. 368, 96 L.Ed. 691 (1952); *Nyberg v. State,* 75 Wis.2d 400, 249 N.W.2d 524 (1977) (no new trial awarded where witness attempted to

N.H. 426, 174 A.2d 825 (1961) (libel trial not unfair where foreman juror's son, who was being represented by plaintiff's attorney, attended son's trial and spoke with the attorney regarding his son's bail), *cert. denied* 369 U.S. 830, 82 S.Ct. 846, 7 L.Ed.2d 795 (1962).

ingratiate himself with two jurors because court found no prejudice and jurors did not know he was a witness).

Now we may turn to the case at hand. The way to dissolve the complication introduced by the fact that PECO's attorney did nothing wrong, I suggest, is to consider the verdicts separately, first, the verdict in favor of the additional defendant, Cardamone, and then the verdict in favor of PECO. I shall start by stating the facts, somewhat more fully than have my colleagues, and then I shall apply to those facts the principles just discussed.

The juror and the additional defendant's attorney had an on-going attorney-client relationship. They had conducted business in the past and at the time of the trial the attorney was representing the estate of the juror's mother. The juror was the executor of the estate. This relationship was fully disclosed at the beginning of trial. The trial court emphasized at different times that there was to be no contact between any of the jurors and the attorneys and parties. Despite this admonition and in direct violation of the Code of Professional Responsibility, DR7–108(B)(1), the attorney for the additional defendant Cardamone asked his secretary to call the client/juror to ask him to come into the attorney's office, if necessary while the trial was in progress. R. 37a. The attorney did not request permission from the court to conduct this business and did not inform the court during the trial of this contact. Consequently, during the trial the trial court did not examine the client/juror or the attorney about the contact or provide any remedial instructions to ameliorate the effects of the contact.

When the client/juror came to the attorney's office, one day during the trial, he and the attorney briefly met and discussed business associated with the estate administration. When the client/juror expressed concern about the meeting, the attorney reassured him. R. 76a–77a. The client/juror in his deposition testified that the attorney even said that "everything had been cleared." R. 85a.

The purpose of the meeting was to facilitate the filing of the estate papers to take advantage of a 5 percent discount

in the inheritance tax—a discount given if filing occurred within 90 days of death. The papers were filed on the day of the meeting and the estate of the client/juror's mother did get the benefit. The attorney and executor fees were set at 6 and 5 percent, respectively, of the estate. At this meeting the client/juror paid the attorney $1,990.54 in partial payment of the total fee of $3,670.54. Thus, both the client/juror and the attorney received economic benefits from their meeting.

These facts disclose that the communication was initiated by the attorney, through his secretary, but that the contents of the communication did not concern the law suit. Accordingly, under the principles discussed above, in considering whether to grant the plaintiff a new trial as to the additional defendant, the trial court should have inquired whether in initiating the communication the additional defendant's attorney intended to influence the jury, by indirection. In my opinion, given the intimacy and importance of the communication, the evidence would have supported a finding of intent to influence, although the court also might have found no intent. If the court found intent to influence, then the verdict in favor of the additional defendant should have been set aside, and *as to the additional defendant* the plaintiff should have been granted a new trial. The additional defendant's attorney would have tried, by unprofessional conduct, to gain a favorable verdict, and he should not be permitted to keep the verdict.

This finding, however, would not dispose of the plaintiff's motion that the verdict *in favor of PECO* should also be set aside, for the facts disclose that PECO's attorney did nothing wrong. The trial court should therefore have inquired further. *Whatever* its finding regarding the additional defendant's attorney's intent—whether he did or did not intend to influence the jury—the court should have determined whether the additional defendant's attorney's communication to the juror *did* influence the jury in PECO's favor. If it did, then as to PECO, the plaintiff should have been granted a new trial.

Thus, had the trial court proceeded under the principles I believe applicable, it might have denied the plaintiff's motion for new trial entirely, or have granted it only as to the additional defendant, or have granted it as to both the additional defendant and the defendant. However, the court did not proceed in this fashion. Instead, without making any findings of fact, either as to intent or prejudice, it granted a new trial as to both the defendant and additional defendant on the ground that the communication to the juror had created an appearance of injustice. Slip op. at 6.[6] In my opinion, this was too general a test, and to that extent, I agree with Judge POPOVICH and Judge WIEAND and disagree with Judge CIRILLO, although, as I hope my discussion of the importance of determining the additional defendant's attorney's intent shows, I share Judge CIRILLO's concern that the jury's deliberations not be intruded upon. However, I disagree with Judge POPOVICH's and Judge WIEAND's view that we can decide this case now. Apparently they are satisfied that the additional defendant's attorney's communication to the juror could not have influenced the jury in PECO's favor. They may be right that it *did* not so influence the jury, but it is not evident to me that it *could* not have. What effect the communication had is a question of fact that should be resolved by the trial court, not by this court. This is particularly so since, once the trial court were instructed that it should resolve the question, it might wish to receive further testimony.[7] Judge CIRILLO may be too quick to

6. Of course, the additional defendant Cardamone may not complain that the court proceeded improperly, for he took no appeal.

7. The record may be inadequate in certain areas. For example, the juror was asked during the taking of his deposition whether the contact with the attorney affected his deliberations, and whether anyone did or said anything that prejudiced him. R. 81a-83a. However, the questions and responses did not distinguish between the *two* deliberations the juror had to engage in—the one as to PECO, the other as to Cardamone. I therefore am unable to agree with Judge WIEAND's statement, in footnote 2 of his opinion, at 1388, that "[a] full evidentiary hearing has already been held." Moreover, even if no further testimony is necessary, still, I do not believe a hearing may be

deny PECO relief, but Judge POPOVICH and Judge WIEAND, I submit, are too quick to grant it.

The case should be remanded for further proceedings consistent with this opinion.

## OPINION IN SUPPORT OF REVERSAL

WIEAND, Judge:

The trial record in this case discloses unequivocally that the plaintiffs and the additional defendant were "in bed" together throughout this trial. Both plaintiffs and the additional defendant, who had been joined by the defendant, cooperated in a joint effort to show that the defendant, Pennsylvania Electric Company, was alone responsible for plaintiffs' fire losses. To this end, the additional defendant testified as a witness for the plaintiffs and gave important evidence against the defendant. His counsel found it strategically advantageous to cooperate by directing his "artillery" in unison with that of the plaintiffs against the defenses of Pennsylvania Electric Company. When the smoke of battle had cleared, however, the defendant emerged victorious. The victory was won fairly and in keeping with the highest traditions of the adversary system of trial by jury. An impartial jury, which could not have failed to observe the alignment of parties and legal artillery, found that Pennsylvania Electric Company had not been responsible for plaintiffs' fire losses.

The trial court deprived the defendant of its victory and awarded a new trial because counsel for the additional defendant, who had been in league with the plaintiffs throughout the trial, had participated in an unrelated, mid-trial conversation with one of the jurors.[1] Counsel for the defendant had not been a party to that conversation; he had committed neither actual nor apparent impropriety at any

characterized as "full" when the trial court did not apply the correct legal principles, and, consequently, did not make any findings of fact.

1. It is significant that counsel for the additional defendant has not appealed from the order of the trial court awarding plaintiffs a new trial.

time. His conduct during trial, both in and out of the courtroom, was exemplary and in keeping with the highest standards of the trial bar. To deprive his client of its victory, fairly won, because of an apparent impropriety brought about by counsel for an adverse party is unwarranted and grossly unfair.

In this respect it should also be noted that the existence of an attorney-client relationship between the juror and counsel for the additional defendant had been disclosed to counsel for the plaintiffs prior to the commencement of trial. We need not speculate whether plaintiffs' counsel, in view of plaintiffs' alignment with the additional defendant, expected to benefit from that association. It is enough that he knew of the relationship and decided knowingly and deliberately to proceed without objection. A single word from him would have removed any future question of impropriety about the juror's participation in the verdict. McKean County is not one of Pennsylvania's more populous counties; it was not unforeseeable that a client, even one who was a juror, might exchange greetings with his lawyer or visit the lawyer's office to act upon and preserve his own affairs during the course of the trial. Nevertheless, plaintiffs' counsel remained silent; he elected to take his chances with the juror. When it was subsequently determined that an unrelated, mid-trial conversation had occurred between the juror-client and the lawyer for plaintiffs' ally, plaintiffs should not have been allowed to change their position to the prejudice of the innocent adversary who won the verdict. Plaintiffs' decision was made with eyes wide open. Plaintiffs should not be allowed to repudiate their decision after they lost the case.

I agree with Judge Popovich that the trial court's award of a new trial will not preserve the appearance of propriety and fairness which courts are charged with maintaining. Instead, its decision will encourage a loss of respect for a judicial system which punishes a party who is procedurally

without blemish and who has been found substantively without fault.[2]

I would reverse the order awarding a new trial against the defendant, Pennsylvania Electric Company, and direct that judgment be entered on the verdict in its favor.

MONTEMURO and POPOVICH, JJ., join in this opinion.

OPINION IN SUPPORT OF REVERSAL

POPOVICH, Judge:

I dissent to the determination that "the appearance of impropriety here is alone sufficient to warrant a new trial." (Opinion In Support of Affirmance at 6) Rather, I believe Pennsylvania case law permits our examination of the facts to ascertain whether an unauthorized contact between a juror and party litigant was prejudicial to the losing, opposition party. *See Printed Terry Finishing v. City of Lebanon,* 247 Pa.Super. 277, 372 A.2d 460 (1977). Thus, there is no need to embrace the "appearance of impropriety" approach to deal with the case at bar, and to do so under the guise that the citizenry of this Commonwealth will some how have their faith in the impartiality of the judicial system shaken is pure sophistry.

Since we are in the unique position of having been afforded insight into the *effect* the juror-litigant contact had on the outcome of the trial, *compare Brancato v. Kroger Co.,*

2. It is possible to applaud the careful research apparent in the Opinion authored by President Judge Spaeth while at the same time decrying the unnecessary additional proceedings which the author proposes. There is no need for additional proceedings. A full evidentiary hearing has already been held. At that hearing the plaintiff-appellees failed to produce any evidence that the verdict in favor of PECO, the innocent party, had been influenced by the communication between counsel for the additional defendant and one of the jurors. Appellees are not entitled to a second chance to prove facts which they failed to prove at the first hearing. This court is now required to review the record as it was prepared (not as it might have been prepared) in the court below. We should not—properly, we cannot—avoid this responsibility by remanding either because a party might have developed a stronger case in the trial court or because the facts proved in the trial court do not fit precisely into the precedential patterns set by prior judicial decisions.

312 Pa.Super. 448, 458 A.2d 1377 (1983), the approach taken by the Opinion In Support of Affirmance is uncalled for and should be abandoned in favor of a prejudice-determining standard.

The facts reveal that as a result of a fire which destroyed property owned by appellee-James R. Colosimo, and occupied by the appellees-Mr. and Mrs. Edel, suit was filed by each appellee against the appellant-Pennsylvania Electric Co. The appellant in turn joined Frank Cardamone and Mr. Edel as additional defendants in both suits, while Colosimo was only made an additional defendant in the Edels' suit. Thus, the cases were tried together.

According to Jay Paul Kahle, Esquire, the attorney for Mr. Cardamone, Mr. Kahle informed the court and all counsel at the outset of the trial that he was performing duties as the attorney for Jay Chapman, Jr., a member of the jury, who was serving as executor of the estate of Inez Chapman. (Deposition of Jay Paul Kahle, 9/10/80, pp. 8, 9). On April 18, 1980, an Inventory and Appraisal in the Inez Chapman Estate was filed bearing the signatures of Mr. Chapman and Mr. Kahle. The jury rendered a verdict in favor of all defendants on April 25, 1980. Post-trial motions were timely filed on May 1, 1980, and supplemented on July 11, 1980. The basis of the supplemental post-trial motion was the undisclosed communication between the juror and the attorney for Frank Cardamone. On September 5, 1980, the court below ordered that depositions be taken of the attorney involved, his secretary and Mr. Chapman.[1] On July 31, 1981, the trial court granted appellees a

1. On September 4, 1980, appellant filed an answer to appellees' supplemental new trial motion, and alleged that such motion was not timely filed under Pennsylvania Rule of Civil Procedure (Pa.R.C.P.) 227.1, and that no leave of court was granted to appellees to file the motion late. Appellant has renewed this contention on this appeal.

Appellees argue that the court below properly disregarded the timeliness issue in ordering that depositions be taken regarding the substance of the out-of-court contact. Pa.R.C.P. 126, which allows a trial court to disregard any error or defect in procedure not affecting the substantial rights of the parties, has been interpreted to permit a waiver of procedural rules when good and sufficient reasons exist.

new trial. On August 7, 1981, the trial court entered an order granting reconsideration of the July 31 order. On October 5, 1981, the court below vacated its reconsideration order, thereby reinstating the July 31, 1981, new trial order.

Appellant attacks the trial court's opinion of July 31, 1981, arguing that the lower court failed to consider that the relationship between the juror and an additional defendant's attorney was disclosed and, that the deposition testimony of the juror, the attorney, and the attorney's secretaries satisfactorily explained the reasons for the contract and that the trial was never discussed. Appellant also points out that the majority of the trial court's opinion consists of a verbatim recitation of a brief submitted by appellees on July 11, 1980, prior to the taking of the depositions.

Apart from the reasoning set forth in the July 11 brief adopted by the court below, the opinion holds that the April 18 contact was not disclosed to the court and counsel, and was contrary to the trial court's explicit instructions to the jurors concerning contact with persons involved in the case. Although we do not approve of a trial attorney conducting unrelated legal business with a juror during the course of a trial in which both are involved, there is no *per se* rule in Pennsylvania that such contact necessitates the ordering of a new trial. In *Printed Terry Finishing v. City of Lebanon, supra,* we affirmed the order of a new trial on the issue of damages where a partner of plaintiff's attorney was seen with a juror after a verdict on liability had been rendered but before the trial for damages. At the start of the trial for damages the appellant requested a mistrial on the basis of this incident. The trial court heard the testimo-

*Stokes v. Thiemann,* 296 Pa.Super. 112, 442 A.2d 322 (1982). *See also, E.J. McAleer & Co. v. Iceland Products,* 475 Pa. 610, 381 A.2d 441 (1977). In this case, appellees maintain that the out-of-court contact did not come to light until after the trial. Because of the serious nature of the allegation raised by the supplemental post-trial motion, we find that the trial court properly ordered discovery on this issue despite the procedural defect.

ny of two witnesses who saw the juror and the attorney together, and summarized their testimony as follows:

"Mr. Nicholas Moehlmann, Esq., an attorney employed by the law firm representing the appellant, but not a participant in the trial, testified that he did not see the origin of the contact, but he did observe Mr. Katz 'either shaking the juror's hand or holding it in some fashion, and he was very close to her face, either kissing her ... on the right cheek or whispering in her right ear. I couldn't tell exactly what he was doing.' (NT 67a) Although he was able to perceive that Mr. Katz and Mrs. Artz were conversing, he could not hear the content of their conversation.

Mr. James Reilly, Esq., a City councilman, testified that he saw Mr. Katz 'shaking her hand in a sort of a long shake as she walked by the corridor ... and he said something to the effect, I will see you next week, and she said, okay.' (NT 137A) He testified that they conversed at longer length, but he could not hear what had been said. 'The reason I knew what they said then is because it was said at a distance that was further up the corridor, and he sort of *yelled*, I will see you next week, and she said, okay.' (NT 138a) (emphasis added) Mr. Reilly further stated that the incident lasted from 'fifteen seconds to half a minute.' (NT 139a)"

247 Pa.Super. at 296, 372 A.2d at 470. When counsel for appellant declined to allow the trial to proceed with eleven jurors, the trial judge refused appellant's motion for a mistrial. We found that the trial judge had erred in not granting the mistrial for the reason that the communication had been described and verified, but not explained, thus casting suspicion on the integrity of the jury verdict. *Id.*, 247 Pa.Superior Ct. at 298, 372 A.2d at 471. In reaching this conclusion, we were persuaded by the fact that there was no evidence on the record from which we could conclude that the conversation had no influence on the verdict. All that was determined was that the contact took place. "We did not know, and the trial judge could not have

known, the content of the conversation or that it was not intended to, or did not, influence either Mrs. Artz or other jurors who were possibly watching or listening." *Id.*

In the case *sub judice*, Mr. Chapman went to Attorney Kahle's office on April 18, 1980, to sign an inheritance tax return and inventory in order to receive the 5% discount on the Pennsylvania transfer inheritance tax due on his mother's estate. (Deposition of Jay E. Chapman, 9/10/80, p. 7). Mr. Kahle testified that his secretary had informed him that it was necessary that Mr. Chapman sign the papers because the three month time period in which to obtain the discount was running out. Therefore, he had instructed his secretary to contact Mr. Chapman to have the papers executed. (Deposition of Jay Paul Kahle, 9/10/80, p. 3). Mr. Kahle testified further that he had no recollection of having had a meeting with Mr. Chapman on April 18, but that he did see Mr. Chapman on that date as Mr. Chapman was leaving Mr. Kahle's office and, to the best of his recollection, they greeted each other briefly and Mr. Chapman indicated that the papers had been signed. (Deposition of Jay Paul Kahle, 9/10/80, p. 2–5).

Mr. Chapman testified that he did meet with Mr. Kahle on April 18 to sign the estate papers. (Deposition of Jay E. Chapman, 9/10/80, p. 19). When asked if Mr. Chapman discussed the Colosimo lawsuit when he met with Mr. Kahle, Mr. Chapman replied:

"A  Absolutely not. I made one comment to Mr. Kahle. I said, 'I suppose this is okay,' and he said 'Yes.'

Q  What did you mean by 'I suppose this is okay'?

A  Well, I have been around enough so that, you know, I know about the association of doing business as a juror when you are doing business with somebody involved in it, in the case, and I didn't want any semblance of impropriety. I wanted to be on the up-and-up with the deal and I was under the impression from Mr. Kahle everything was fine so there was nothing to worry about. Handled [sic] all com-

munications necessary to inform all parties involved that I did have business in his office.

Q   So all you did that day then was sign the papers?

A   I signed the papers."

(Deposition of Jay E. Chapman, 9/10/80, pp. 19, 20). Mr. Chapman also stated that his contact with Attorney Kahle and Attorney Kahle's secretaries did not affect him in the deliberation or decision in the case, (Deposition of Jay E. Chapman, 9/10/80, pp. 24–26), and that there had been no discussion concerning the case. (Deposition of Jay E. Chapman, 9/10/80, pp. 27, 28). Mr. Chapman also wrote four checks, including one representing Mr. Kahle's fee. (Deposition of Jay E. Chapman, 9/10/80, pp. 27, 28). Mr. Kahle's secretaries testified that Mr. Chapman came to the office on April 18 to sign the checks and papers, but that they did not talk to Mr. Chapman about the trial. (Deposition of Bonnie Semmel, 9/10/80, pp. 13, 14) (Deposition of Rose Elliott, 9/10/80, pp. 6–8).

In support of the lower court's order that a new trial be held, appellees cite, as did this court in *Printed Terry*, Disciplinary Rule 7–108(B) of the Code of Professional Responsibility, which provides that:

"During the trial of a case: (1) A lawyer connected therewith shall not communicate with or cause another to communicate with any member of the jury. (2) A lawyer who is not connected therewith shall not communicate with or cause another to communicate with a juror concerning the case."

Although Rule 7–108(B) clearly proscribes any contact between a juror and an attorney connected with a case, whether the contact is related to the case or not, a violation of this rule does not necessarily mean that the case must be tried anew. In *Printed Terry* the communication between the attorney and the juror was not explained and, therefore, we could not determine if the contact influenced the outcome of the case. 247 Pa.Super. at 298, 372 A.2d at 471. Although in *Printed Terry* we specifically reserved ruling on the issue presented in the instant case, where the inci-

dent was explained but involved more than an unavoidable courtesy, discreet in nature, we clearly contemplated the situation where communication between an attorney and a juror could be explained satisfactorily so that a new trial would not be deemed necessary. We stated:

> "Such contacts, however, must not be of such a nature as to cast suspicion upon the integrity of the jury verdict. Thus, the Supreme Court of the United States, in *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892), pronounced that:
>
>> 'Private communications, possibly prejudicial between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least *unless their harmlessness is made to appear.*' *Id.* at 150, 13 S.Ct. at 53. (Emphasis added).
>
> We therefore agree with the statement of the court in *California Fruit Exchange v. Henry*, 89 F.Supp. 580, 588–89 (W.D.Pa.1950), that:
>
>> 'The courts look with suspicion upon any communications between parties to a suit or their counsel and the jury impaneled to try it; and *if such communication is had and it appears that a conversation was had about the suit, or the communication is not explained satisfactorily*, it will, in itself, be ground for a new trial. If, when explained, however, it can be seen in the communication nothing was said about the case and nothing was done for the purpose of influencing the mind of the jury, and that the communication or conversation had no influence on the verdict which was reached, no ground exists to set the verdict aside for the reasons that said comment could not have been prejudicial.'" (Emphasis in original)

*Id.*, 247 Pa.Superior Ct. at 298–299, 372 A.2d at 471.

In the instant case, there is ample record evidence that the contract between Mr. Chapman and Attorney Kahle was innocuous. Mr. Kahle had informed the court and counsel that between the time the jury had been selected, in October, 1979, and the commencement of trial in April 1980, Mr.

Chapman had consulted him involving the estate of Inez Chapman. (Plaintiff's Proposed Findings of Fact and Conclusions of Law, p. 2). Mr. Kahle testified that Mr. Chapman was a client of his in an active case. (Deposition of Jay Paul Kahle, 9/10/80, pp. 8, 9). Nevertheless, neither party objected, moved for a mistrial, or asked that Mr. Chapman be replaced or that a new jury be impaneled.

Further, and more importantly, it cannot be discounted that *the juror's contact was not with the appellant's counsel.* A point which I believe has been relegated, and unnecessarily so, to a secondary status in the Opinion In Support of Affirmance. Merely because contact occurred between a juror and counsel for the additional defendant-Cardamone does not lead to the inescapable conclusion that the plaintiffs-appellees were denied a right to a fair trial in their cause of action against the appellant-Pennsylvania Electric Co.

In point of fact, Cardamone's posture at trial was *not* favorable to Pennsylvania Electric Co. For example, aside from having been forced into the suit as an additional defendant by Pennsylvania Electric Co., Cardamone testified on behalf of the plaintiffs' case and counsel for the plaintiffs did not treat him as a hostile witness. During the remaining portion of the trial, Cardamone was not called as a witness in his own behalf or for the benefit of the other defendants.

Given the fact that we have a clear picture of what transpired below (between additional defendant-Cardamone's counsel and a juror), which bespeaks of conduct that may be regretable but certainly not reversible, this writer refuses to join in the Opinion In Support of Affirmance's "appearance of impropriety" stance for it does little to advance the cause of jurisprudence. Rather, it applies a *per se* rule of reversal where the facts (supplemented by post-trial depositions on the allegation of impropriety) dictate a prejudicial error standard, which, when applied to the

case at bar, reveals that the conduct complained-of was harmless at best. *See Brancato v. Kroger Co., supra.*

Accordingly, I would reverse the order of the lower court.