**William BECKER, Plaintiff,**

**v.**

**ARCO CHEMICAL COMPANY, Defendant.**

**No. CIV. A. 95–7191.**

United States District Court, E.D. Pennsylvania.

June 29, 1998.

George P. Wood, Carmen R. Matos, Stewart Wood & Branca, Norristown, PA, for Plaintiff.

Maureen M. Rayborn, Daniel V. Johns, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Presently before the Court is a motion by defendant ARCO Chemical Company ("ARCO") for judgment as a matter of law, or in the alternative for a new trial, or in the alternative, for remittitur. For the reasons contained herein, the Court denies ARCO's motion.

## I. BACKGROUND

The plaintiff, William P. Becker ("Becker") sued his former employer, ARCO, for age discrimination in connection with his discharge from employment. Specifically, Becker alleged in a three-count complaint that the conduct of ARCO employees violated the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"), and constituted intentional infliction of emotional distress. The Court granted summary judgment in favor of ARCO on the claim for intentional infliction of emotional distress. The remaining claims under the ADEA and the PHRA proceeded to trial.

At the conclusion of an eleven-day jury trial at which twenty-one witnesses testified, the jury returned a verdict in favor of plaintiff. Becker was awarded $186,095 in back pay damages, $380,000 in front pay damages, and $170,000 in compensatory damages. The jury declined to award punitive damages or liquidated damages. In accordance with the verdict, the Court entered judgment in favor of plaintiff in the amount of $736,095.

## II. LEGAL STANDARD

### A. *Judgment as a Matter of Law*

In ruling on a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), the evidence in the case must be viewed in the light most favorable to the successful party, and every reasonable inference therefrom must be drawn in that party's favor. *See Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992); *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1178 (3d Cir. 1976) ("The trial judge, in his review of the evidence, . . . must expose the evidence to the strongest light favorable to the party against whom the motion is made and give him the advantage of every fair and reasonable inference"). It is impermissible to question the credibility of witnesses, or to weigh conflicting evidence as would a fact-finder. *See Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 691 (3d Cir. 1993). Applying these precepts, a jury verdict can be displaced by judgment as a matter of law only if "the record is 'critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief.'" *Dawson v. Chrysler Corp.*, 630 F.2d 950, 959 (3d Cir. 1980) (quoting *Denneny v. Siegel*, 407 F.2d 433, 439 (3d Cir. 1969)).

### B. *Granting a New Trial*

The Court's discretion is also limited in determining whether to order a new trial pursuant to Federal Rule of Civil Procedure 59. Granting a new trial "effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts." *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90 (3d Cir. 1960) (en banc). A new trial ·on the basis that the verdict is against the weight of the evidence can be granted "only where a miscarriage of justice would result if the verdict were to stand." *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). Where the proffered basis is trial error, "[t]he court's inquiry . . . is twofold. It must first determine whether an error was made in the course of the trial, and then must determine

whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." *Farra v. Stanley–Bostitch, Inc.,* 838 F.Supp. 1021, 1026 (E.D.Pa. 1993) (internal quotations omitted), *aff'd without op.,* 31 F.3d 1171 (3d Cir. 1994); *see* Fed.R.Civ.P. 61.

### C. *Remittitur*

■■■ With regard to remittitur, such relief is appropriate if the Court "finds that a decision of the jury is clearly unsupported and/or excessive." *Spence v. Board of Educ. of Christina Sch. Dist.,* 806 F.2d 1198, 1201 (3d Cir. 1986); *see* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2815 (1973). If remittitur is granted, the party against whom it is entered can accept it or can proceed to a new trial on the issue of damages.

## III. DISCUSSION

### A. *Judgment as a Matter of Law*

#### 1. *Liability for age discrimination*

■■■ ARCO argues that it is entitled to judgement as a matter of law because there is not a legally sufficient basis for the jury's conclusion that ARCO intentionally discriminated against Becker because of his age. ARCO's claim must be analyzed with reference to the evidentiary framework applicable to age discrimination claims brought under the ADEA and the PHRA. *See, e.g., Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 330 (3d Cir. 1995); *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). *See also Kelly v. Drexel University,* 94 F.3d 102, 105 (3d Cir.1996) (applying same standards to PHRA claims and ADEA claims). In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court set out a three-step analysis to be applied in pretext cases.[1]

First, the plaintiff must establish a prima facie case by showing: (1) that he is over forty; (2) that he was qualified for the position in question; (3) that he suffered an adverse employment action; and (4) that he was replaced by a sufficiently younger person to permit an inference of age discrimination. *Simpson v. Kay Jewelers,* 142 F.3d 639, 644 n. 5 (3d Cir.1998); *Brewer,* 72 F.3d at 330 (3d Cir. 1995). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)(quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). "To establish a presumption is to say that a finding of the predicate facts (here, the prima facie case) produces 'a required conclusion in the absence of explanation' (here, the finding of unlawful discrimination)." *Id.*

Second, if the plaintiff offers sufficient proof to establish prima facie case, the employer then has the "burden of producing an explanation to rebut the prima facie case—i.e., the burden of 'producing evidence' that the adverse employment action was taken for a 'legitimate nondiscriminatory reason.' " *Id. See also Simpson,* 142 F.3d 639, 644 n. 5; *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir. 1997). It is important to note, however, although the presumption of the prima facie case shift the burden of production to the defendant " 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff' " *St. Mary's,* 509 U.S. at 507, 113 S.Ct. 2742.

Third, if the defendant satisfies its burden of production, the presumption raised by the prima facie case is rebutted and "drops from

---

1. This a pretext, as opposed to a mixed motive case. In a "mixed-motives" case, the employee must produce direct evidence of discrimination, i.e., more direct evidence than is required for a pretext case. *Starceski v. Westinghouse Electric Corp.,* 54 F.3d 1089, 1096 n. 4 (3d Cir.1995). If the employee does produce direct evidence of discriminatory animus, the employer must then produce evidence sufficient to show that it would have made the same decision if illegal bias had played no role in the employment decision. *Id.* (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). In this case, the plaintiff has not presented direct evidence of discrimination, and therefore, the pretext case analysis applies.

the case,"[2] and the plaintiff is afforded an opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. *Id.* at 507–08, 113 S.Ct. 2742. Plaintiff may satisfy this burden by submitting evidence from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Fuentes,* 32 F.3d at 763. *See also Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1067 (3d Cir. 1996) (en banc); *Miller v. CIGNA Corp.,* 47 F.3d 586, 598–99 (3d Cir. 1995). Ultimately, "[t]he fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *St. Mary's,* 509 U.S. at 511, 113 S.Ct. 2742.

■ ARCO first attacks the plaintiff's prima facie case by arguing that Becker failed to show that his replacement, who was eight years younger, was sufficiently younger to permit an inference of age discrimination. In support of its argument, ARCO cites *Richter v. Hook–SupeRx, Inc.,* a case in which the Seventh Circuit held that a *seven-year* age difference was not sufficient to support an inference of age discrimination. 142 F.3d 1024 (7th Cir.1998). In *Richter,* the Seventh Circuit specifically noted that relevant precedent did not establish per se rules which would serve to exclude "cases where the gap is smaller [than one's found to be insufficient] but evidence nonetheless reveals the employer's decision to be motivated by age." *Id.* at 1028 (citation omitted). Thus, finding itself guided rather than bound by precedent, the *Richter* court looked to the facts and circumstances of the case, and determined that the seven-year age gap was not sufficient to support an inference of dis-

crimination because there was no other evidence on the record establishing that the defendant considered the plaintiff's age to be significant. *Id.*

■ Contrary, to ARCO's contentions, *Richter* clearly does not establish a per se seven-year age difference rule. Instead, it directs courts to examine the age difference in light of the facts and circumstances of the case. The caselaw generally supports this approach. The Third Circuit has declined to set up bright-line rules by stating that "[t]here is no magical formula to measure a particular age gap and determine if it is sufficiently wide to give rise to an inference of discrimination." *Barber v. CSX Distribution Servs.,* 68 F.3d 694, 699 (3d Cir. 1995). "Different courts have held, for instance, that a five year difference can be sufficient but that a one year difference cannot." *Sempier v. Johnson & Higgins,* 45 F.3d 724 (3d Cir. 1995) (citations omitted)(four-year age difference between plaintiff and replacement found sufficient when substantial portion of duties were transferred to employee who was ten years younger than plaintiff). *See also Barber,* 68 F.3d at 699 (eight-year difference sufficient); *Healy v. New York Life Ins. Co.,* 860 F.2d 1209 (3d Cir. 1988)(nine-year difference sufficient); *Corbin v. Southland Int'l Trucks,* 25 F.3d 1545, 1550 (11th Cir. 1994) (finding evidence of pretext when a 53 year-old was treated more favorably than a 58 year-old employee). The Ninth Circuit has even held that "replacement by even an older employee will not necessarily foreclose ... proof if other direct or circumstantial evidence supports an inference of discrimination." *Douglas v. Anderson,* 656 F.2d 528, 533 (9th Cir. 1981). In other words, the relevant issue is whether the evidence provides a basis for a reasonable factfinder to conclude that a discriminatory animus was at play in the employer's decision. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S.

---

**2.** When the presumption of discrimination drops from the case, that does not mean that the underlying facts of the prima facie case lose their probative value. *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3d Cir. 1996). As stated by the Supreme Court, " '[i]n saying that the presumption [of discrimination] drops from the case, we do not imply that the trier of

fact no longer may consider evidence previously introduced by plaintiff to establish a prima facie case.... [T]his evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual.' " *Id.* (quoting *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. 1089).

308, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). In light of Third Circuit precedent and because, unlike the plaintiff in *Richter*, Becker presented other evidence that ARCO's decision was motivated by age, the Court concludes that under the circumstances of this case the plaintiff succeeded in establishing that he was replaced with a sufficiently younger person to support an inference of discrimination. Therefore, Becker established a prima facie case.

Once Becker satisfied the elements of the prima facie case, ARCO then had the burden of producing evidence that Becker was terminated for a legitimate nondiscriminatory reason. ARCO presented evidence that Becker failed to deal constructively with customer complaints and management criticism about his laboratory and its work, and cited these failures as legitimate, non-discriminatory reasons for discharging Becker. This satisfied ARCO's burden of production causing the presumption of discrimination raised by the prima facie case to drop off. Once the presumption of discrimination dropped off, Becker was left to demonstrate that the proffered reason was not the true reason for the employment decision. *St. Mary's*, 509 U.S. at 507–08, 113 S.Ct. 2742. ARCO contends that Becker failed to do so because: (1) Becker presented no direct evidence that ARCO was motivated by his age when it discharged Becker; (2) Becker failed to undermine ARCO Chemical's legitimate nondiscriminatory reasons for discharging him; and (3) Becker presented insufficient circumstantial evidence to establish that age was a determinative factor in ARCO Chemical's decision to discharge Becker. The Court disagrees.

■ As to ARCO's first argument, Becker is not under an obligation to present direct evidence that ARCO was motivated by Becker's age when it discharged him. The Third Circuit clearly stated, in *Fuentes*, 32 F.3d at 764, that a plaintiff can meet his or her burden of proof through the use of either "direct or circumstantial evidence." *See also Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43 (3d Cir. 1989)(holding that direct evidence of discrimination is not necessary).

■ As to ARCO's second and third arguments, the Court concludes that there was sufficient evidence to support either the jury's disbelief of ARCO Chemical's legitimate nondiscriminatory reasons for discharging Becker or the jury's belief that an invidious discriminatory reason was more likely than not a motivating or determinative factor in ARCO's decision to terminate Becker. In response to ARCO's claim that he failed to deal constructively with customer complaints and management criticism about his laboratory and its work as a legitimate, non-discriminatory reason for discharging Becker, plaintiff introduced specific evidence casting doubt on the reason proffered by defendant for his discharge, such as evidence that: (1) while some of his performance reviews contained criticisms of plaintiff's interpersonal skills, others contained praise of his interpersonal skills; (2) some of plaintiff's supervisors, other evaluators and customers considered the plaintiff to have good interpersonal and customer relations skills; and (3) that customer complaints cited by defendant were unfounded and possibly fabricated.

More generally, plaintiff also introduced evidence showing that: (1) that during the 23 years of his employment with ARCO, the plaintiff received at least an acceptable rating on all his performance reviews from 1970 through 1992 and the only rating the plaintiff received below acceptable was in the performance review filed in the year plaintiff was discharged; (2) that the plaintiff received regular performance bonuses including one in the year he was discharged; (3) that ARCO did not consider customer service to be the most important qualification for his position as asserted by the defendant, but that instead, technical ability was the most important qualification. Furthermore, Becker presented certain statements made by ARCO employees as circumstantial evidence of discrimination. These statements included a comment allegedly made by Becker's second-tier supervisor that a vice president of ARCO "wanted younger people in management," and statements allegedly made by the plaintiff's immediate supervisor that he was taking plaintiff "off the fast track," "knocking [Becker] down a notch" because "older guys are getting all the merit money."

In summary, the Court concludes that the evidence, when viewed in the light most favorable to plaintiff, supports the jury's finding that ARCO intentionally discriminated against Becker based on his age. Thus, the record is not "critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief," *Dawson*, 630 F.2d at 959, and the Court may not disturb the jury's verdict on liability.

### 2. *Damages*

The jury found that ARCO discriminated against Becker and awarded Becker $736,095 in damages. This was comprised of $186,095 in back pay damages, $380,000 in front pay damages, and $170,000 in compensatory damages.

 ARCO alleges that Becker is not entitled to recover $380,000 in front pay because he ceased mitigating his damages six months before trial, and because his earlier efforts to seek new employment were sporadic at best. It is true that a plaintiff has a duty to mitigate his damages. *Ford Motor Company v. EEOC*, 458 U.S. 219, 232, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982); *Maxfield v. Sinclair International*, 766 F.2d 788, 796 (3d Cir. 1985). However, it is the defendant who bears the burden of proving by a preponderance of the evidence that the plaintiff failed to mitigate his damages. *Starceski v. Westinghouse Electric Corp.*, 54 F.3d 1089, 1101 (3d Cir. 1995); *Anastasio v. Schering Corp.*, 838 F.2d 701, 707–708 (3d Cir. 1988); *Herkalo v. National Liberty Corp.*, 1997 WL 408325 (E.D.Pa. 1997)(citing *Booker v. Taylor Milk Co., Inc.*, 64 F.3d 860 (3d Cir. 1995)). The defendant can satisfy its burden by establishing that "substantially equivalent positions were available to [the plaintiff] and he failed to use reasonable diligence in attempting to secure such a position." *Anastasio*, 838 F.2d at 707–08.

At trial, Becker presented evidence of his efforts to secure employment after his discharge. Becker testified that, immediately after being discharged, he attempted to obtain consulting work. When that proved un-

successful, he proceeded to check newspaper advertisements, submit resumes, and visit personnel agencies. In addition, the plaintiff submitted into evidence a substantial number of letters which were transmitted by him to various companies, and the rejection letters he received in response. ARCO responded with a chart summarizing the number of letters sent each month by the defendant to prospective employers in an attempt to challenge the reasonableness of plaintiff's efforts.

ARCO contends that, as to the availability of substantially equivalent positions, it satisfied it burden of proof because:

> Plaintiff's own mitigation documents amply demonstrate that there were many jobs available—jobs that were, objectively, appropriate for plaintiff's professional experience, education level and salary range, and subjectively, targeted by plaintiff himself as worth pursuing.

(Def.'s Mem. at 27 n. 17.) As to the reasonableness of Becker's mitigation attempts, ARCO claimed that the chart summarizing Becker's mitigation efforts demonstrated that Becker only applied for jobs sporadically.

This conflicting evidence was presented to the jury, which apparently sided with Becker.[3] The Court concludes that there was sufficient evidence on the record upon which a reasonable jury could base its rejection of ARCO's claim that Becker failed to mitigate his damages.

 Furthermore, contrary to ARCO's assertions, the jury's award of front pay should not be invalidated because Becker accepted full-time employment with his son's business. ARCO contends that acceptance of the full-time job constitutes a per se disqualification from receiving front pay. ARCO does not cite, nor can the Court locate, a case supporting the proposition that a discharged employee is precluded from earning a living at a non-comparable job while he or she searches for a comparable position. Therefore, the relevant issue is not whether Becker worked for his son, but whether he

---

**3.** Because the jury awarded less than testified to by the plaintiff's damages expert, it is entirely plausible that the jury reduced its front pay award based on the evidence presented by the defendant.

continued to seek comparable employment while working for his son's business. Again, there was sufficient evidence on the record from which the jury could have concluded that Becker continued seeking comparable employment while working for his son's business. *See supra* p. 609.

ARCO also argues that it is entitled to judgment as a matter of law on Becker's compensatory damages claim because Becker failed to demonstrate that the discharge caused him any pain and suffering or affected his life in any way. In support of its claim, ARCO points to *Spence v. Board of Education of Christina School District*, 806 F.2d 1198 (3d Cir. 1986), in which the Third Circuit affirmed a remittitur based upon lack of evidence to support an award of damages for emotional distress. In that case, the plaintiff, an art teacher, testified that "she was depressed and humiliated [when she was transferred to another job] and that she lost her motive to be creative." However, she produced no evidence that she had lost income, suffered physically or undergone counseling as a result of the incident. *Id.* at 1201. The Third Circuit upheld the trial court's remittitur because neither the circumstances nor the testimony met the applicable burden of proof, which requires the plaintiff to "establish[ ] that there was a reasonable probability, rather than a mere possibility, that damages due to emotional distress were in fact incurred." *Id.*

In the instant case, unlike in *Spence*, there was evidence of loss income presented by plaintiff's expert from which the jury could have inferred emotional distress. *See Bolden v. SEPTA*, 21 F.3d 29 (3d Cir. 1994)(holding that jury could infer emotional distress from loss of income). The record also reveals other evidence of emotional distress. Becker testified to the shock he suf-

fered upon being terminated, and the accompanying feelings of anger, betrayal and embarrassment. He testified to his feelings of humiliation when he was escorted from the ARCO building by corporate security guards in the presence of his peers and colleagues. Becker also explained that after the termination, he felt stupid, and was distressed at the prospect of informing his wife of his termination. (Oct. 21 Tr. at 84–97). In addition, Becker's testimony was corroborated by Becker's son who testified that, after the termination, Becker lost weight, appeared pale, and seemed to age at least ten years.[4] The son also described changes in Becker's behavior after the termination such as his inability to participate in family gatherings and the strained nature of Becker's relationship with his wife. The Court concludes that Becker's testimony, the testimony of his son, and expert testimony on Becker's loss of income, provided a sufficient basis upon which a jury could find that the termination caused Becker emotional distress.

The Third Circuit held that evidence very similar to the evidence presented in this case was sufficient to support a $250,001 award of compensatory damages for emotional distress. *Bolden v. SEPTA*, 21 F.3d 29. In *Bolden*, the plaintiff testified that, as a result of his employer's actions, he experienced a loss of "dignity, hope, self-esteem, and spirit," he could not find a new job, and an enormous stress was placed on his family. This testimony was corroborated by Bolden's wife, daughter and two friends. In addition to finding that the testimony presented was sufficient to support an award of compensatory damages, the Third Circuit held that a jury could infer emotional distress from Bolden's loss of income. *Id.* at 33.

---

4. ARCO also claims that the testimony is deficient because Becker's son failed to testify that he saw his father regularly before the discharge. To the contrary, Becker's son testified that: "At the time [of the discharge] I was seeing my father anywhere from two to four times a week," (Tr. 10/24/97 at 184), and "I've seen my father throughout the years," (*id.* at 185).

Defendant also claims that the testimony of Mr. Becker's son is insufficient because Becker's son did not testify as to what caused the changes

which he observed in his father. Such testimony is not necessary to a finding of emotional distress because the jury could have inferred from his observations that the changes in Becker were caused by the discharge. *See Bolden*, 21 F.3d at 33 (testimony by plaintiff's wife and daughter that plaintiff "changed a great deal in the wake of [a] drug test administered to him in 1987," in conjunction with plaintiff's own testimony, was sufficient to support award of damages for emotional distress).

In light of Third Circuit precedent and based upon the record in this case, Becker presented sufficient evidence to support a verdict for emotional distress damages. Therefore, ARCO's motion for judgment as a matter of law must be denied.

## B. *Request for a New Trial*

ARCO alleges that it is entitled to a new trial because the verdict is contrary to the weight of the evidence and a new trial is necessary to prevent a miscarriage of justice. For the reasons stated above, a new trial will not be granted on that basis.

ARCO also alleges that it is entitled to a new trial based on several rulings of the Court that constituted prejudicial errors of law and affected substantial rights of ARCO including: (1) the Court's refusal to excuse prospective jurors 19 and 4 for cause; (2) the admission of evidence concerning the circumstances surrounding the discharge of Linwood Seaver, a former employee of ARCO; (3) the admission of evidence concerning stray remarks made by a non-decision maker employed by ARCO; and (4) the exclusion of evidence regarding Becker's performance evaluation ranking within Becker's department. ARCO also seeks a new trial based on the allegedly improper conduct of plaintiff's counsel. Each of these claims will be addressed below.

### 1. *Refusal to excuse jurors 19 and 4 for cause*

Relying upon *Kirk v. Raymark Industries, Inc.,* 61 F.3d 147 (3d Cir. 1995), ARCO argues that it is entitled to a new trial because the Court abused its discretion in denying ARCO's motion to excuse prospective jurors # 19 and # 4 for cause. In *Kirk,* the Third Circuit held that "compelling a party to use any number of its statutorily mandated peremptory challenges to strike a juror who should have been removed for cause is tantamount to giving the party less than its full allotment of peremptory challenges." *Id.* at 157. Such a denial or impairment of a peremptory strike was found to require per se reversal of a jury verdict. *Id.* at 161.

*Kirk* also sets out the standard for determining whether a particular juror should be excused for cause. The Court's main concern is "whether the juror holds a particular belief or opinion that will 'prevent or substantially impair' the performance of his duties as a juror in accordance with his instructions and oath." *Id.* at 153 (quoting *United States v. Salamone,* 800 F.2d 1216, 1226 (3d Cir. 1986)). "A juror is impartial if he or she can lay aside any previously informed 'impression or opinion as to the merits of the case' and can 'render a verdict based on the evidence presented in court.' " *Id.* (quoting *United States v. Polan,* 970 F.2d 1280, 1284 (3d Cir. 1992)). The teaching of *Kirk* is that courts "should not rely simply on the juror's subjective assessment of the their own impartiality." *Id.* (citing *Waldorf v. Shuta,* 3 F.3d 705, 710 (3d Cir. 1993); *Government of the Virgin Islands v. Dowling,* 814 F.2d 134, 139 (3d Cir. 1987)). Rather, courts are directed that a juror's protestations of impartiality should not be credited if other facts of record indicate to the contrary. *Dowling,* 814 F.2d at 139.

In *Kirk,* a personal injury case involving asbestos, the Third Circuit concluded that the district court should have stricken two of the jurors for cause because the jurors in question could not decide the case impartially. The first juror, juror # 251 was biased because: he had been exposed to a substantial amount of asbestos through his work; he had received one-sided literature regarding asbestos from his union; he believed 97% of the older workers in his union had tested positive for asbestos exposure; he had two uncles who died from lung cancer after being exposed to asbestos; he admitted that he was leaning in favor of the plaintiff; he believed he was likely to suffer from an asbestos related injury himself; and he knew a lot of union members who were suffering from asbestos related injuries. *Id.* at 154. The second juror, juror # 45 repeatedly admitted that he would have difficulty being fair to the defendant, and that he felt it was immoral to produce asbestos knowing that is was going to cause a problem. *Id.* at 154–55. Based on these facts, the Third Circuit concluded that "juror # 45 and especially juror # 251 could not serve fairly and impartially in light of

their past experiences and personal biases." *Id.* at 156. According to the Third Circuit, the two jurors should have been dismissed for cause despite their protestations that they could be impartial.

■ ARCO's claim is different from the one made in *Kirk* because the facts on the record are not indicative of the type of bias exhibited by the jurors in *Kirk.* For instance, ARCO contends that juror # 4 should have been excused for cause because she filed a grievance against her former employer for gender discrimination. ARCO's reasoning is tantamount to a prescription of per se disqualification of any potential juror who has *ever* had an employment dispute. Rather than a per se rule, *Kirk* calls for a searching inquiry as to whether the juror's proffered impartiality is belied by the juror's personal experiences. In conducting its inquiry, the Court considered the amount of time that had passed since the dispute, the similarity of the juror's dispute to the facts of the case, similarities in the nature and size of the employers, and the juror's general attitude towards jury service.

In the case of juror # 4, the dispute with her employer was very remote in time, i.e. it occurred fourteen years earlier. (Tr. 10/15/98 at 42.) Also, because she was employed by the county, she was less likely to hold the incident against ARCO, which is a private rather than a public employer. (Tr.

10/15/98 at 43–44.) Moreover, although she initially expressed reservations about her ability to be fair, upon further questioning, juror # 4 admitted, in a manner that appeared very credible to the Court, that she would be able to be fair to both parties to the litigation.[5] (Tr. 10/15/98 at 43–44.) In summary, juror # 4 claimed she could be impartial and the facts on record did not undermine that claim.

■ With respect to juror # 19, ARCO claims similarly that she should have been dismissed for cause because of a dispute she had with her employer, who she claimed treated her differently because she did not have a college degree. Again, rather than apply a per se rule of disqualification, the Court looked closely at whether, under the circumstances of the case, the juror's claim of impartiality comported with the facts on the record. Juror # 19 filed her complaint against a prior employer five years earlier and the dispute was settled out of court. (Tr. 10/15/98 at 71). Furthermore, she indicated that she had a positive experience with her new employer, a company which was understanding of the dispute with her previous employer and the effect the dispute had on her. (Tr. 10/15/98 at 71–72). While it is true that juror # 19 initially stated that the incident would affect her ability to be fair and impartial to the parties in the case, she later agreed that ARCO had nothing to do with her bad experience and that she would

5. The colloquy regarding the juror # 4's grievance against her employer for passing her over for a promotion based on her sex was as follows:

THE COURT: And what was the outcome of your grievance?

JUROR NO. 4: I won it.

THE COURT: So you were given the job?

JUROR NO. 4: Yeah, but the other gentleman had more seniority than I had for year [sic], but they shouldn't have had.

THE COURT: But you got satisfaction in a sense over your grievance?

JUROR NO. 4: Mm-hmm.

THE COURT: Now is there anything about that experience that would affect your ability to be fair and impartial in this case towards the parties?

JUROR NO. 4: Mm-hmm.

THE COURT: And what would that be?

JUROR NO. 4: I'm still real bitter.

THE COURT: Now, the employer in that case, what was the employer?

JUROR NO. 4: The county.

THE COURT: The county, Delaware County. Now obviously Arco has nothing to do with Delaware County. So the question would be, would you hold Arco responsible for what Delaware County did to you at the time?

JUROR NO. 4: No.

THE COURT: So if the facts as they came out, and I have no idea what the facts will show, but let's assume that the facts show that Arco could not be held responsible in this case, would you be able to return such a verdict if that's what the facts showed?

JUROR NO. 4: Sure.

THE COURT: And if you search within yourself can you be fair to both parties here and call it as you see it?

JUROR NO. 4: Sure.
(Tr. 10/15/97 at 43–44).

be able to keep an open mind as to who should prevail. (Tr. 10/15/98 at 71–73.) She also clearly and unambiguously stated that she would be able to return a verdict in favor of ARCO if the facts so warranted.[6] (Tr. 10/15/98 at 73.) Thus, given the remoteness in time of the incident, the amicable settlement of her case, the plaintiff's subsequent positive employment experience, and her neutral attitude toward the defendant in the case, the Court found that juror # 19 could act impartially.

In summary, the Court sees no reason why, unlike the *Kirk* jurors, juror # 4 or juror # 19 could not lay aside any previously formed impression or opinion as to the merits of the case and/or render a verdict based on the evidence presented in court. There-

---

6. The colloquy between juror # 19 and the Court proceeded as follows:

THE COURT: You testified that you had sued your employer.

JUROR NO. 19: Yes.

THE COURT: Do you want to tell us the circumstances of that?

JUROR NO. 19: I had been working for an employer who treated me differently because I did not have a college degree, and it was belittling, degrading, and just mind—every day of the year.

THE COURT: When did that happen?

JUROR NO. 19: About five years ago.

THE COURT: And that's an employer different from [your current employer] FMC?

JUROR NO. 19: Oh, yes, yes.

THE COURT: And what was the outcome of that case?

JUROR NO. 19: They settled with me out of court.

. . .

THE COURT: As a result of being involved in that case, will that affect your ability to be fair and impartial to these parties in this case?

JUROR NO. 19: I feel it would.

THE COURT: How is that?

JUROR NO. 19: It just leaves me with a terrible feeling, because when I was hired with FMC, I sat and explained the whole situation with them, too, and they are a totally different group of people, but it just leaves me with a bad feeling about employers and employees and, you know, how they're treated.

THE COURT: FMC, you haven't had any problems with them?

JUROR NO. 19: No, not at all.

THE COURT: And you don't hold it against FMC what your prior employer did to you?

fore, the Court properly denied ARCO's requests to dismiss these two jurors.

2. Evidence concerning the circumstances *surrounding the discharge of Linwood Seaver*

ARCO claims it is entitled to a new trial because the Court erred in allowing plaintiff to testify to circumstances surrounding the discharge of Linwood Seaver, a former ARCO employee. Specifically, ARCO contends that Becker's testimony on this matter should have been excluded under Rules 403, 608(b) and 404(b) of the Federal Rules of Evidence.

Becker testified that, in connection with the discharge of Mr. Seaver in 1991, he was asked, in the presence of Mr. Victor, to lie about the quality of Mr. Seaver's work in

JUROR NO. 19: No, and they didn't hold it against me what I did.

THE COURT: Now, Arco—what is the name of your employer, by the way?

JUROR NO. 19: Penn Color.

THE COURT: Penn Color; okay. Arco has nothing to do with Penn Color.

JUROR NO. 19: As far as I know, Penn Color just did dispersants, color dispersants, and I don't know how that . . .

THE COURT: So Arco has no responsibility, had nothing to do with what happened to you?

JUROR NO. 19: No.

THE COURT: Now, knowing that and understanding that, do you still feel that you would not be able to be fair to the employer in this case because of your own experience, even though its a completely different entity that had nothing to do with what happened to you.

JUROR NO. 19: I don't know how to answer that. I don't now. I honestly don't know how I would react.

THE COURT: Well, let's assume that the facts in this case warranted a result in favor of the employer, and I don't know what those facts are going to be, but let's assume that it does.

Would you be able to return a verdict in favor of the defendant in this case if it was so warranted by the facts? .

JUROR NO. 19: Yes.

THE COURT: Would you hold it against them and not return a verdict in favor of the defendant because of what happened to you?

JUROR NO. 19: No. No.

THE COURT: Do you have an open mind as to who should prevail in this case?

JUROR NO. 19: Yes.

order to facilitate Mr. Seaver's termination by ARCO. Mr. Victor was the ARCO employee who made the decision to terminate Becker's employment. ARCO argued that the testimony should not be admitted because it was evidence of a prior wrong which was being offered to show that Mr. Victor acted in conformity with the prior bad act by fabricating complaints about the quality of Becker's work.

Although evidence of prior wrongs is inadmissible to show that a person acted in conformity therewith on a particular occasion, the Court found Becker's testimony to be admissible under Federal Rule of Evidence 404(b) which permits the use of evidence of prior bad acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Becker's testimony is evidence of a scheme or plan of fabricating reasons used by the decision maker in terminating employees. *See Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490 (7th Cir. 1998)(admitting document fraudulently created by plaintiff to show plaintiff's common scheme or plan of creating false documents relating to disputes with employers). As such, it is relevant to the issue of whether the reasons provided by ARCO for Becker's discharge were pretextual. The evidence of an instance in which a pretext was fabricated in connection with the termination of another employee, could also be relevant to the issue of whether Mr. Victor, the decision maker in this case, acted with discriminatory intent. *Stair v. Lehigh Valley Carpenters Local Union No. 600*, 813 F.Supp. 1116, 1119 (E.D.Pa. 1993), *aff'd*, 43 F.3d 1463 (3d Cir. 1994)(holding that employer's actions toward other employees can be evidence of employer's discriminatory intent). Thus, the evidence regarding an attempt to create pretextual reasons for Mr. Seaver's termination was properly admitted for the purpose of showing intent and plan.

7. ARCO incorrectly claims that the Court's failure to specifically articulate its balance between the probative value and the prejudicial effect of the evidence is reversible error. The Third Circuit has held that " 'the trial court's failure to expressly articulate a Rule 403 balance when faced with a Rule 403 objection, would not be reversible error per se.' " *Glass v. Philadelphia*

Of course, there are limitations on the admissibility of Rule 404(b) evidence. Pursuant to Rule 403, the evidence can be excluded if the its probative value is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403, *see U.S. v. Sriyuth*, 98 F.3d 739 (3d Cir. 1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1016, 136 L.Ed.2d 892 (1997).[7] The trial court has significant leeway in making its Rule 403 determination. *United States v. Himelwright*, 42 F.3d 777, 781 (3d Cir. 1994).

The evidence in question was relevant for two reasons. First, the incident to which Mr. Becker testified occurred in the presence of Mr. Victor, the individual who decided to terminate Becker. Also, the lies Becker was allegedly asked to tell, i.e. lies about the quality of Mr. Seaver's work, were similar to the reasons cited by ARCO for Becker's termination.

On the other hand, with respect to the risk of prejudice, it is important to note that prejudice alone is not sufficient to warrant exclusion under Rule 403. *See* 2 Weinstein & Berger, *Weinstein's Federal Evidence* § 403.04[1][a] (2d ed. 1998). " 'Virtually all evidence is prejudicial; or it isn't material. The prejudice must be unfair' [to warrant exclusion under Rule 403]." *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 923 (3d Cir. 1985) (quoting *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613 (5th Cir. 1977)). The Third Circuit has "noted that a significant danger of undue prejudice will be found to exist where the evidence has an undue tendency to suggest a decision on an improper basis. *Sriyuth*, 98 F.3d at 748(discussing unfair prejudice); *United States v. Copple*, 24 F.3d 535, 546 (3d Cir. 1994)(same). For instance, where there are 'substantial possibilities ... that a jury will harbor strong adverse sensitivity

*Electric Company*, 34 F.3d 188, 192 (3d Cir. 1994)(quoting *United States v. Eufrasio*, 935 F.2d 553, 572 (3d Cir. 1991)). Thus, an appellate court, when faced with this problem, can either "decide the court implicitly performed the required balance, or undertake to perform the balance [itself]." *Id.*

to the challenged evidence.'" *Sriyuth*, 98 F.3d at 748. Here, the type of evidence proffered was unlikely to trigger an intense human reaction on an improper basis. For example, the evidence did not involve violent or socially repugnant or politically controversial conduct committed by defendant, *see, e.g, United States v. Aguilar–Aranceta*, 58 F.3d 796, 800–802 (1st Cir. 1995)(excluding evidence that witness worked in an abortion clinic); *United States v. Harvey*, 991 F.2d 981, 996 (2d Cir. 1993)(excluding evidence of X-rated videos seized from defendant's residence), nor did it appeal to an instinct to punish, *see Government of Virgin Islands v. Archibald*, 987 F.2d 180, 186–87 (3d Cir.1993)(excluding evidence that defendant previously committed statutory rape). Furthermore, the Court reduced the risk of unfair prejudice by giving a limiting instruction regarding the purpose for which the evidence could be used. *See* Jack B. Weinstein, et al., *Federal Evidence*, § 404.23[5][c] (2d ed.1998)(limiting instruction "substantially reduce[s] any prejudice in admitting other-crimes evidence").[8] Therefore, the claimed unfair prejudice did not substantially outweigh the probative value of the evidence.

ARCO claims that the Court originally excluded the Linwood Seaver evidence after undertaking a balancing analysis under Rule 403, and then, "without explanation changed its Rule 403 ruling and allowed plaintiff to testify concerning the Linwood Seaver evidence." (Def.'s Mem. at 36.) That simply is not the case. The first Rule 403 balancing analysis is distinguishable from the Court's later decision to admit the evidence in two respects. First, the plaintiff originally argued that the evidence should be admitted to attack the credibility of Mr. Victor; an improper basis for admitting the evidence. Second, the plaintiff was seeking to offer the evidence on redirect, and the evidence was not within the scope of redirect. Later, based on a different argument for admissibility, i.e. Rule 404(b), the Court found the evidence to be admissible. Additionally, the evidence was not presented on redirect. Instead, the Court allowed the plaintiff to reopen his direct examination, and thus, it was admitted as part of the plaintiff's case-in-chief.[9]

█ Finally, with respect to Rule 608(b), ARCO contends that the evidence, even if admissible under Rule 404(b), is inadmissible under Rule 608(b) which provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, . . . may not be proved by extrinsic evidence." Fed.R.Evid. 608(b). The Third Circuit specifically addressed this issue in *U.S. v. Console*, 13 F.3d 641 (3d Cir. 1993), and held that "evidence barred by Rule 608(b) solely for impeachment can be admitted if it is otherwise relevant to a material issue." 13 F.3d 641–42, 641–42 n. 19 (citations omitted). In *Consoles*, the Third Circuit found that the district court erred by excluding evidence on the basis of Rule 608(b) because the evidence was otherwise admissible to show that the defendant acted knowingly. *Id.* at 661. Here, as in *Console*, although potentially excludable under Rule 608, the evidence was otherwise admissible to show intent and/or plan. Therefore, the Court did not err in admitting Becker's testimony regarding the circumstances surrounding the termination of Linwood Seaver.

---

8. The Court instructed the jury as follows:

> You have heard evidence of Mr.—Dr. Ramey made statements to Mr. Becker in the presence of Mr. Victor concerning the termination of another ARCO Chemical employee. Those statements were not admitted into evidence to prove the character of Mr. Ramey or Mr. Victor in order to show that they performed similar acts when terminating Mr. Becker's employment. You may only consider that evidence as proof of motive, intent, preparation, plan, or knowledge.
> (Tr. 11/3/97 at 22).

9. ARCO claims that it is unclear whether the evidence was presented as direct evidence or as rebuttal evidence. However, the Court clearly stated:

> I gave the plaintiff the right to reopen their direct. And by way of management of the case, I then told them to present him at the end of the case, . . . so we wouldn't have Mr. Becker like a yo-yo going back and forth. Since he was going to testify on rebuttal I said you bring that up in rebuttal technically, but it is really a direct examination.
> (Tr. 10/30/97 at 130–31.)

### 3. *Evidence of stray remarks*

ARCO's next claim is that the Court committed reversible error when it allowed plaintiff to testify as to statements made in 1985 by Dr. Ramey, who at the time, was the Manager of Research Services and the supervisor of Mr. Becker's boss. The exact testimony admitted was that Dr. Ramey came to Becker's office, and allegedly told Becker that:

"Dr. James Connor, the Vice President of Research and Development [sic] wants to have younger people in management. [sic] And, therefore, Jim Victor is going to be your new boss."

(Tr. 10/20/97 at 92.) In furtherance of its argument, ARCO asserts two basis for excluding the statement: (1) it is inadmissible hearsay; and (2) its probative value is substantially outweighed by the danger of unfair prejudice.

■ The statement by Dr. Ramey is not hearsay. The Third Circuit has "recognized that a plaintiff may offer circumstantial proof of intentional discrimination on the basis of age in the form of a supervisor's statements relating to formal or informal managerial attitudes held by corporate executives." *Ryder v. Westinghouse Electric Corp.*, 128 F.3d 128, 132 (3d Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1052, 140 L.Ed.2d 115 (1998). Because the statement by Dr. Ramey was offered as circumstantial proof of ARCO's managerial viewpoints, and not for the truth of the matter asserted by Dr. Ramey, *see id.*, the statement does not fall within the definition of hearsay, *see* Fed.R.Evid. 801 (defining hearsay).

■ ARCO argues that even if the statement made by Dr. Ramey is admissible under *Ryder v. Westinghouse,* Dr. Ramey's statement contained a hearsay statement which is not admissible; namely the statement by Mr. Connor that he "wants younger people in management." To the contrary, the alleged statement made by Dr. Ramey expressed Dr. Ramey's understanding regarding managerial attitudes about age at ARCO. In other words, as expressed in *Abrams v. Lightolier, Inc.*, 50 F.3d 1204 (3d

Cir. 1995), the statement does not present a double hearsay problem because:

"Where a supervisor is authorized to speak to subordinates about the employer's employment practices, a subordinate's account of an explanation of the supervisor's understanding regarding the criteria utilized by management in making decisions in hiring, firing, compensation and the like is admissible against the employer.... We perceive no double hearsay problem because we do not think the supervisor's explanation, if offered through the testimony of the supervisor would be subject to a hearsay objection."

*Id.* at 1216.

■ The statement is also admissible under a Rule 403 analysis. First, the evidence is probative of whether ARCO acted with discriminatory intent when discharging the plaintiff because it demonstrates the formal or informal managerial attitudes regarding age which were held by corporate executives. *Walden v. Georgia–Pacific Corp.*, 126 F.3d 506 (3d Cir. 1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998); *Brewer,* 72 F.3d at 326; *Abrams,* 50 F.3d at 1215. In fact, the Third Circuit has recognized that evidence of this kind, "seems to become ever more critical as sophisticated discriminators render their actions increasingly more subtle to circumvent adverse judicial precedent." *Ryder,* 128 F.3d at 132 (citation omitted).

On the other hand, the risk of unfair prejudice is slight. As with the evidence regarding Linwood Seaver's discharge, this evidence does not trigger an intense human reaction, such as would be the case where the proffered evidence involved violence or socially repugnant or politically controversial conduct by the defendant. *See Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1331–33 (6th Cir. 1994)(finding statements by defendant's president that he did not like being around old people and that he would like to put older people in concentration camps not to be unfairly prejudicial). In addition, the risk of unfair prejudice was reduced by ARCO's ability to present Dr. Ramey as a witness to dispute Becker's version of his dealings with Ramsey. Therefore, the Court

properly concluded that the probative value of the evidence was not substantially outweighed by its prejudicial impact.

■ ARCO argues that the statements may not be admitted under Rule 403 because they were not made by the individuals who terminated Becker and because they were made at a remote time. However, statements made by non-decision makers, even if temporally remote, may be admitted under Rule 403 as circumstantial evidence of discrimination. *Walden,* 126 F.3d at 520–21 (3d Cir. 1997); *Brewer,* 72 F.3d at 333–34. Therefore, the Court rejects ARCO's argument.

■ Even assuming that the evidence was erroneously admitted, the error was not so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice. *See Farra,* 838 F.Supp. at 1026; Fed. R. Civ. P. 61 (describing harmless error standard). Plaintiff presented evidence of other statements made by the decision maker closer in time to Becker's discharge, such as Mr. Victor's statements that he was taking Becker "off the fast track," "knocking [Becker] down a notch," and "older guys [like Becker] are getting all the merit money." Given the availability of these other statements as well as other substantial evidence probative of intentional discrimination in this case, the Court concludes that the statement in question was not so prejudicial to ARCO's defense as to render the verdict inconsistent with substantial justice. *See Cooley,* 25 F.3d at 1331–33(admission of inflammatory statements regarding elderly persons was not error, and if error, was harmless error given other evidence of pretext presented).

4. The exclusion of evidence regarding Becker's *ranking within his department*

Contrary to ARCO's claim, the Court did not commit reversible error by excluding ARCO's evidence regarding Becker's performance ranking within his department. ARCO sought to have Mr. Shearer, a human resources person at ARCO, establish that plaintiff's performance evaluation scores placed him in the bottom 10% of ARCO professionals working in Becker's depart-

ment. The evidence was properly excluded for two reasons.

■ First, the evidence is excluded by Rule 1006 which regulates the admission of summaries into evidence. Pursuant to Rule 1006, a summary is not admissible unless the underlying documents upon which the summary is based are made available to the opposing party for examination. Fed. R.Evid. 1006; *Trout v. Pennsylvania Railroad Co.,* 300 F.2d 826, 830 (3d cir. 1962); *Pritchard v. Liggett & Myers Tobacco Co.,* 295 F.2d 292, 300–01 (3d Cir. 1961). *See also Air Safety, Inc. v. Roman Catholic Archbishop of Boston,* 94 F.3d 1, 7–8 (1st Cir.1996); *United States v. Bakker,* 925 F.2d 728, 736–737 (4th Cir. 1991). The purpose of this requirement is to provide the opposing party who desires to attack the authenticity or accuracy of the summary with opportunity to prepare for cross-examination or offer rebuttal evidence. *United States v. Denton,* 556 F.2d 811, 816 (6th Cir.1977).

Here, because Mr. Seaver's testimony consisted of a summary of company data, Federal Rule of Evidence 1006 applies. *See* Jack B. Weinstein, et al., *Federal Evidence,* § 1006.05[2] (2d ed. 1998)("Summary evidence need not be an exhibit, but may take the form of a witness's oral testimony."). While ARCO proffered a chart summarizing information taken from personnel files, it did not make the underlying personnel and computer files available to the plaintiff for examination. (Tr. 10/30/98 at 82.) In fact, throughout discovery, ARCO strenuously opposed the disclosure of any information relating to other employees of ARCO. (Tr. 10/30/98 at 82.) Given these circumstances, plaintiff was deprived of an opportunity to prepare cross-examination or rebuttal testimony. Therefore, under Rule 1006 the summary evidence was not admissible.

■ Second, there was no basis for concluding that the evaluations of other employees were comparable to Becker's evaluations. The evaluations being compared were prepared by different managers and were obviously subjective in nature. In the absence of underlying data showing that the basis for the evaluations were comparable,

the jury would be left improperly to speculate. Because the evidence does not have the tendency to make the existence of the relevant fact (i.e., that 90% of the individuals in Becker's department performed better than Becker) more probable or less probable than it would be without the evidence, the evidence was also properly excludable under Federal Rules of Evidence 401. Moreover, it was also excludable under Federal Rule 403 in that admission of the evidence concerning performance evaluations of other employees by other supervisors of the employer would have required a multitude of mini-trials on matters peripheral to the core of this case. *See* Fed. R. Evid. 403 (permitting evidence to be excluded if its probative value is substantially outweighed by the danger of confusion of the issues or by considerations of undue delay or waste of time).

### 5. *Improper conduct of plaintiff's counsel*

#### a. *Mr. Wood's communication with a juror*

■ Citing *Colosimo v. Pennsylvania Electric Co.,* 337 Pa.Super. 363, 486 A.2d 1378 (1984), *aff'd,* 513 Pa. 155, 518 A.2d 1206 (1986), ARCO argues that a new trial should be granted because Mr. Wood, one of plaintiff's attorneys, communicated with a member of the jury panel. The *Colosimo* opinion states that, as a general rule, "a trial court should grant a new trial if an attorney communicates with a juror during the course of a trial and the harmlessness of such contact is not shown." 486 A.2d at 1380. According to *Colosimo,* "insignificant contact is not grounds for mistrial in the absence of prejudice," unless the contacts "if permitted to stand would shake the confidence of laymen in the fairness of the judicial proceedings." *Id.*

Here, the Court observed Mr. Wood make eye contact with and signal juror # 24 during jury selection. The Court questioned Mr. Wood at side bar, where he explained that when juror # 24 looked at him, he instinctively started to respond by waving at the juror to indicate that she would not be called to sidebar, and by the time he realized he was communicating with the juror, it was too late. (Tr. 10/15/97 at 98–99.) Mr. Wood was admonished by the Court for his conduct. During the side bar conference counsel for defendant was asked whether she had any comments or questions, to which she responded "no, sir." (Tr. 10/15/97 at 99.) Ultimately juror # 24 was not selected to sit on the jury for reasons unrelated to this episode.

It is difficult to imagine any contact which could be more insignificant than the contact between Mr. Wood and juror # 24. While any contact between counsel and prospective jurors is a matter of extreme importance, in this case, the Court questioned Mr. Wood and determined that the contact had been inadvertent and nonprejudicial. The contact, such as it was, could not be said to "shake the confidence of laymen in the fairness of the judicial proceedings." *Colosimo,* 486 A.2d at 1380. Finally, because the prospective juror ultimately was not selected to sit on the jury for other reasons, the contact could not have prejudiced ARCO in any way.

#### b. *Mrs. Mantos's closing argument*

ARCO also argues that a new trial should be granted because of improper remarks made by plaintiff's counsel during closing argument. Specifically, ARCO claims that plaintiff's counsel: vouched based upon facts not of record,[10] repeatedly vouched for her client;[11] misrepresented facts of record;[12]

---

**10.** Defendant specifically cites the following statement as vouching based on facts not in the record:

> And ladies and gentlemen of the jury, rarely, if ever, *and I have worked for the Government as well for 16 years.* Rarely, if ever, do you see a company come into any type of either court or forum to say, we fired him because of age. (Tr. 10/31/98 at 72)(emphasis added by defendant).

**11.** ARCO contends that the following statements constituted improper vouching:

> I felt good when he [plaintiff] said that, because *I believe my client. The first minute I saw him and the first time I met him, I believed him.* (Tr. 10/31/98 at 76) (emphasis added by defendant.)
>
> And I've had that experience with my children, of course, I'm sure you have, too. When my daughter had a cigarette in her pocket and lied to me about that and said, Mom, I don't have it, but she gave me this glassy look and *I knew that she had it and I knew that she had done it.*

improperly referred to absent witnesses;[13] and made blatant appeals to the sympathy of jurors.[14] At the outset, the Court notes that counsel for ARCO did not interpose any objections during the plaintiff's closing argument, and did not request any curative instructions; nor did ARCO move for a mistrial.

■ By failing to timely object, ARCO has waived its right to challenge statements made by plaintiff's counsel during her closing. *See Dunn v. HOVIC*, 1 F.3d 1371, 1377 (3d Cir. 1993)(waived appeal by failing to make timely objection with respect to statements made in closing argument); *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979)("Counsel's failure to object precludes him from seeking a new trial on the grounds of the impropriety of opposing counsel's remarks."); *Stainton v. Tarantino*, 637 F.Supp. 1051, 1052 (E.D.Pa. 1986). As stated by the Supreme Court, counsel cannot "remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that comments to the jury were improper and prejudicial." *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 238–39, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *Stainton*, 637 F.Supp. at 1082.

ARCO points to the Third Circuit decision in *Anastasio*, 838 F.2d at 706 n. 11, for the

proposition that failure to object to the improper conduct of counsel during closing argument does not constitute a waiver of the right to raise the impropriety of the statements in a motion for a new trial or on appeal, if a curative instruction would not have been sufficient to mitigate the prejudicial comments of counsel. In *Anastasio*, counsel referred to personal beliefs concerning the credibility of witnesses during the closing statement. *Id.* at 706. The Third Circuit found "these isolated comments in the context of an otherwise proper summation and with the benefit of the Court's instructions [that statements by counsel did not constitute evidence] did not warrant a new trial." *Id.* In a footnote, the Court noted that, under certain circumstances, a curative instruction may not be adequate to mitigate the prejudicial effect of counsel's improper comment. *Id.* at n. 11 (citing *Ayoub v. Spencer*, 550 F.2d 164, 170 (3d Cir. 1977)). Rather than finding that waiver had occurred, the Court considered the failure to object, as one of the factors "bearing upon [the Court's decision] of whether the statements made were improper commentary by counsel." *Id.* Based on this formulation, the Court still "conclud[ed] that the statements were not so prejudicial as to warrant new trial."[15] *Id.* at 706(citation omitted).

... (Tr. 10/31/98 at 70) (emphasis added by defendant)
And if you weren't doing a good job, you wouldn't get those (raises) would you? *At least if I was an employer, I wouldn't give it to my employees if they're not doing their job.* (Tr. 10/31/98 at 74) (emphasis added by defendant); What employer would to that? Fire an employee and give them a bonus? *"I don't know, that doesn't make sense to me."* (Tr. 10/31/98 at 74) (emphasis added by defendant); and *I still don't understand some of those tests, but I know he has the expertise to do them, because I've seen all the records.* All the records that he produced. (Tr. 10/31/98 at 77) (emphasis added by defendant).

12. ARCO contends that Ms. Mantos misrepresented facts on the record when she made the following two comments:
And Mr. Shearer said [plaintiff] was targeted. They [ARCO Chemical] were unhappy because he didn't take that offer. (Tr. 10/31/98 at 121). Ms. Mantos also represented to the jury that "[t]hey [ARCO Chemical employees] are targeted for reductions in force. That happened to Mr. Becker." (Tr. 10/31/98 at 72).

13. The specific statement referred to by ARCO is:
Mr. Stefanou did not appear in court. If he would have helped them, he would have been here.
(Tr. 10/31/98 at 119).

14. ARCO contends that plaintiff's counsel appealed to the sympathy of the jurors by stating:
Now I don't know if you saw the Philadelphia movie or not. And that was a story about the Philadelphia lawyer. But I remember one scene in that movie when the partner of the big law firm said to Mr.—oh, I can't remember his name now—to the lawyer that he was fired. And you know what he focused on? He didn't focus on the work that he'd done, he focused on his face. And he had AIDS of course, and he had the lesions on his face. And there was a spot there, and the partner couldn't take his eyes off of that. Well, here, the element is age. They can't take their eyes off of that age.
(Tr. 10/31/98 at 98).

15. Anastasio relied on *Ayoub*. *Ayoub* involved a case where opposing counsel had objected to an improper remark by counsel during closing and

Thus, under *Anastasio,* the task of the Court is to place the challenged remark in context considering the failure to object as one of the factors. *Id.* at 706 n. 11. Weighing all the relevant factors, the ultimate question is whether the challenged statements made the jury's verdict a "product of prejudice." *Id.* at 706 (quoting *Draper v. Airco,* 580 F.2d 91, 96, 97 (3d. Cir. 1978)). Applying *Anastasio* to this case, the Court will consider the following factors: (1) the challenged remarks were made at the conclusion of a lengthy eleven day trial which involved complex issues and after the jury had heard twenty-one witnesses and the court had admitted hundreds of pages of exhibits; (2) the evidence of intentional discrimination proffered by plaintiff was reasonably strong, *see supra* pp. 608–609; (3) defense counsel did not object to any of the remarks that counsel now claim are prejudicial, nor did counsel request either a curative instruction or move for a mistrial before the verdict was returned; (4) defendant's lead trial counsel is a highly skilled practitioner in employment litigation, who must have recognized the pitfalls in counsel's statements at the time the challenged statements were made; (5) since several of the challenged statements were of the same vintage, e.g. counsel's "personal beliefs," an objection by defense counsel to the offending reference the first time it was made, would have allowed the Court to admonish Ms. Mantos, and it is likely that said admonition would have prevented the subsequent related improper statements; (6) counsel has not offered any justification for why objections were not made to the allegedly improper remarks; (7) the contested remarks constituted a minuscule portion of a lengthy closing which covers more than thirty pages in print; (8) defense counsel had the opportunity to respond to all of the improper remarks (except one brief reference to the movie Philadelphia made in rebuttal) during defendant's closing following plaintiff's closing statement; and (9) the trial court instructed the jury both at the outset of the proceedings and in the final charge that

the trial court had given a curative instruction. The Third Circuit found that the curative instruction given was not "sufficient to mitigate the prejudicial effect" [of counsel's comment]. *Ay-*

statements by counsel were not evidence in the case.

The Court concludes that while the contested remarks in this case, were perhaps "intemperate," *Dunn,* 1 F.3d at 1377, and "undignified," *Socony–Vacuum Oil Co.,* 310 U.S. at 152, 60 S.Ct. 811, and while some contained statements of personal belief, *Anastasio v. Schering,* 838 F.2d at 706, whether taken singly or collectively, placed in context, and under the circumstances of the case, the remarks do not render the verdict the product of prejudice.

### C. *Remittitur*

In the alternative to a new trial, ARCO moves for remittitur of the jury's award for compensatory damages, back pay and front pay based on the fact that they are grossly excessive, unsupported by the evidence, and should shock the conscience of the Court. As has already been discussed, the Third Circuit found that evidence similar to the evidence presented in this case was sufficient to support an award of $250,001 in compensatory damages. *Bolden,* 21 F.3d at 29. Therefore, the Court concludes that the jury's award of $170,000 in compensatory damages is neither excessive nor clearly unsupported.

With respect to the jury's back pay and front pay awards, both were supported by the testimony of plaintiff's expert. Mr. Verzilli, an economist presented by Mr. Becker, determined that, taking a reduction to present value into account, Mr. Becker's back pay damages to be $186,095 and Mr. Becker's future loss of earnings to be between $435,051 and $587,567. (Tr. 10/24/97 at 135–40; *see also* Pl.'s Ex. 329 a,b,c). The jury's award of $186,095 in back pay corresponds exactly to the expert opinion, while the jury's award of $380,000 in front pay actually falls below the range presented by plaintiff's expert. Therefore, the Court does not find the jury's award to be excessive, unsupported or shocking to the conscience.

*oub,* 550 F.2d at 170. *Ayoub,* therefore, stands for the unremarkable proposition that an inadequate curative instruction will not cure a prejudicial statement.

*ORDER*

AND NOW, this 29th day of **June, 1998**, upon consideration of defendant ARCO's motion for judgment as a matter of law, or in the alternative for a new trial, or in the alternative for remittitur (doc. no. 115), plaintiffs' response thereto(doc. no. 121), and defendant's memorandum in support of its motion (doc. no 124), plaintiff's response thereto (doc. no. 127), motion by defendant to file a reply brief and the attached reply (doc. no 131), motion by plaintiff to file a surreply and the attached surreply (135), motion by defendant to file a supplemental memorandum and the attached memorandum (doc. no. 139), and plaintiff's motion in opposition to defendant's motion to file a supplemental memorandum and the attached memorandum (doc. no. 140), and for the reasons stated in the Memorandum accompanying this Order, it is hereby **ORDERED** as follows:

1. As to docket number 115, defendant's motion for judgment as a matter of law, or in the alternative for a new trial, or in the alternative for remittitur, the motion is **DENIED**;

2. As to docket number 131, defendant's motion for leave to file a reply memorandum in the attached form, the motion is **GRANTED**;

3. As to docket number 135, plaintiff's motion for leave to file a surreply to defendant's motion for judgment as a matter of law, or in the alternative for a new trial, or in the alternative for remittitur, the motion is **GRANTED**;

4. As to docket number 139, defendant's motion for leave to file a supplemental memorandum in the attached form, the motion is **GRANTED**;

5. As to docket number 140, plaintiff's motion for leave to file a supplemental memorandum in the attached form, the motion is **GRANTED**.

AND IT IS SO ORDERED.